**UNITED STATES of America**

v.

**William James SCOTT, Appellant.**

No. 78–1985.

United States Court of Appeals,
Third Circuit.

Argued Dec. 14, 1978.

Decided Jan. 16, 1979.

As Amended Feb. 2, 1979.

532

George E. Schumacher, Federal Public Defender, Theodore S. Hopkins, Asst. Fed. Public Defender, Pittsburgh, Pa., for appellant.

Blair A. Griffith, U. S. Atty., Thomas A. Crawford, Jr., Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before ALDISERT and ADAMS, Circuit Judges, and COOLAHAN, District Judge.*

## OPINION OF THE COURT

ADAMS, Circuit Judge.

When citizens are confronted with authority exercised by law enforcement agents, they frequently are unable to protect fully their rights and interests. Few Americans are trained in the intricacies of the law; many are unaware of the limitations placed on the power of our government and its officers by the Constitution and statutes. Because of this lack of knowledge there is a gap between the promise of liberty pronounced in our nation's laws and the actual day-to-day contact between citizens and officials charged with the enforcement of those laws. This is not to suggest that those entrusted with this authority often abuse their power, or take unfair advantage of the powerless. Rather, they operate with knowledge of the law while those with whom they deal do not. In recent years, a balance has been struck by the courts in an effort to guarantee that constitutional rights will not be rendered meaningless for those who are themselves unable to assert them. Thus, in certain contexts it has been thought necessary to require the government to inform the citizen of the extent of his legal rights.

*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In other contexts it is enough if a court is satisfied that the citizen's actions were voluntary, and that his will was not overborne by the presence, prestige, and power of an official. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1972).

We are presented in this case with an appellant who complains that his consent to a search of his premises was not voluntary, and that evidence secured as a result of that search should therefore have been excluded. Inasmuch as voluntariness in matters of this nature is a question of fact, and because we conclude that the district court did not resolve the issue of the voluntariness of appellant's consent, we shall remand for a finding on this question.

I.

In August 1977, agents of the Bureau of Alcohol, Tobacco and Firearms received information that William James Scott possessed an illegal firearm. This information had been provided by Willie Davis, Scott's probation officer. Scott was on parole after having been placed on Pennsylvania's Accelerated Rehabilitation Disposition Program as the result of an unrelated earlier offense, the theft of three dollars. Agent Michael Wallington consulted the National Firearms Register and Transfer Record and verified that no firearm was registered in Scott's name. Wallington and another agent, Omer Kaylor, thereupon traveled to Scott's home, without first securing either a search or arrest warrant. Scott recalled that the agents stated: "Let us in and then we'll talk, or we'll go and get a paper and come back and we'll get you." At that point, Scott allowed the agents into his house after they had identified themselves, but before they had stated their business.

Once inside, the agents informed appellant that his parole officer had told them that Scott had an illegal weapon, and asked to see it. Scott apparently admitted that he had a weapon, but denied it was illegal.

* Senior United States District Judge for the District of New Jersey, sitting by designation.

He was, he later testified, under the impression that Pennsylvania law forbade the shortening, or "sawing off," only of a semiautomatic, automatic or shotgun, and that there was no ban against cutting a .22 caliber rifle. Scott took the agents to his bedroom and showed them the weapon on which he was working.

There is conflicting testimony regarding what happened next. The agents recalled giving Scott his *Miranda* warnings, but Scott denied this. He testified that they left his home after asking him to come down to their office and give a full statement later, assuring him that if he did so there "probably wouldn't be any waves." Thereafter, Scott went to the federal courthouse and gave a complete written statement. At that time he was clearly informed of his fifth amendment rights, which he waived by signing a printed warning and waiver form. Scott testified that he was again advised that he probably would hear nothing further about the gun.

Whatever Scott may have been told by the agents, the case went to trial and Scott moved to suppress his statements, both oral and written. The district court denied the motion, saying:

> It appears that the defendant was not in custody at the time, and there is a question here. It appears that the agents testify he was given his *Miranda* warnings, but I'm not sure that they had to be given at that particular time; and he was given the *Miranda* warnings later on down at the office where he came voluntarily. At no time did he ask for an attorney.
>
> So we will deny the motion. However, I think under 18 U.S.C. § 3501, we will have to submit the voluntariness of this to the jury.

The case was submitted to the jury, and Scott was found guilty of both illegal possession and illegal manufacture of a firearm. 26 U.S.C. §§ 5861(d), (f), 5871. He appeals to this Court.

## II.

We think it clear from the trial judge's ruling that he understood the motion to suppress as one based on the fifth amendment, going to the admissibility of Scott's statements conceding ownership of the gun. The court doubted that the warnings mandated by *Miranda* were required when the agents were at Scott's home, in that Scott was not "in custody" at that time, and noted that the warnings were given once Scott came to the courthouse. *Miranda,* of course, primarily protects one's fifth amendment right against self-incrimination. That the district court viewed the issue as a fifth amendment challenge is further indicated by its reference to 18 U.S.C. § 3501, which concerns the admissibility of confessions.

Although the Supreme Court, out of concern for the rights of those unschooled in constitutional law, has required that warnings be given so as to protect fifth amendment rights, this duty imposed on law enforcement officials attaches only when a suspect is actually in custody, that is, "in custody at the station or otherwise deprived of his freedom of action in any significant way." [1] It is true that one can be "in custody" so as to require *Miranda* warnings even in one's own home. In *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), the failure of four policemen to give *Miranda* warnings after they entered the accused's bedroom at four in the morning resulted in a reversal. But *Orozco* is not persuasive here. In addition to an unusual factual situation, *Orozco* is notable for the admission by the law enforcement officers that the defendant was "under arrest and not free to leave." Accordingly, even in his own bedroom, Orozco was "in custody." In contrast, Scott was neither under arrest nor was his freedom of action restricted in any significant way. In these circumstances, we agree with the district court that no *Miranda* warnings were required at his house. Consequently, it was not error to deny the motion to suppress on fifth amendment grounds. Nor was it er-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

ror, once it had been considered by the district court, to submit to the jury the question of the overall voluntariness of Scott's statements.

### III.

We believe, however, that, on the facts presented here, the motion to suppress also raised questions concerning the adequacy of the protection afforded Scott's fourth amendment right to be free from unreasonable searches and seizures.[2]

In *Schneckloth v. Bustamonte, supra,* the Supreme Court rejected a *Miranda*-type approach in considering the validity of consents to a government request to search an area. If the *Miranda* logic had been applied, such a consent would have to be "knowing and intelligent," that is, the person giving the consent and thus, in effect, waiving his rights, would have to be aware of those rights before any such consent was valid. This traditional test for a valid waiver—"an intentional relinquishment or abandonment of a known right or privilege"[3]—would almost certainly have required *Miranda* type warnings before a consent would have been sustainable.

■ The *Schneckloth* Court concluded that the stricter standard typified by *Miranda* was necessary only for those rights designed to protect a fair trial and the reliability of the fact-finding process. The fourth amendment, however, it was reasoned, required no such *per se* rule. The Court held it was still necessary for a consent to be "voluntary," and this voluntariness was "to be determined from the totality of all the circumstances."[4] Here, Scott apparently consented to a search of his house. Under *Schneckloth,* such a consent can be effective even if it is not proved that Scott knew of the right to refuse, provided that the district court is able to conclude, on the basis of all the circumstances, that Scott's consent was given voluntarily.

■ We cannot say that the record here unquestionably established the voluntariness of Scott's consent to the search. It may well be that Scott was not intimidated and gave his permission freely. There is, for instance, no evidence of any physical coercion. Moreover, Scott has testified that he did not believe his gun to be illegal, which might suggest that he had little reason, at least in his own mind, to object to the search. On the other hand, Scott was confronted by agents of the government. Probably, he did not understand the extent of his right to refuse them entry.[5] He testified that they told him they would return with a warrant unless he let them in, which he did, even without knowing the nature of their mission. It may be that he was advised, as he claims, that if he cooperated there "wouldn't be any waves." Such facts, if believed—and it should be noted that the government disputes some of them—would support a finding that Scott's consent to the agents' entry was not wholly voluntary.

It is not clear, on the record before us, whether the district court made a finding as to the voluntariness of Scott's consent to the search under the "totality of the circumstances" test set out in *Schneckloth.* Without such a finding, we are unable to evaluate this issue. The judgment of the

---

2. The government has argued that Scott never moved to suppress on fourth amendment grounds but moved only to suppress "oral and written statements." Accordingly, it urges that Scott is barred from making a fourth amendment argument on this appeal. In our view the connection between Scott's oral admissions and the entry of the agents into his home is so close, and the two questions are sufficiently intertwined, that we are disinclined to limit Scott's constitutional contention. Consequently, we construe Scott's motion to suppress as raising both fourth and fifth amendment questions.

3. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938).

4. 412 U.S. at 223, 93 S.Ct. at 2045. *See United States v. Molt,* 589 F.2d 1247, at 1251 (3d Cir.).

5. Although *Schneckloth* rejects a test that would turn entirely on the accused's knowledge and understanding of his rights, such knowledge or understanding remains a factor to be considered in evaluating "all the circumstances." *Id.* 249, 93 S.Ct. 2059.

district court will therefore be vacated and the case remanded for such action as .is consistent with this opinion.