UNITED STATES of America,
Plaintiff-Appellee,

v.

George BUSH, Sr., Defendant-Appellant.

No. 86–1044.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1986.

Decided May 15, 1987.

Bernard G. Young, East St. Louis, Ill., for defendant-appellant.

Joel Merkel, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before COFFEY, FLAUM, Circuit Judges, and PARSONS, Senior District Judge.*

COFFEY, Circuit Judge.

Defendant George Bush, Sr. appeals his conviction of two counts of extorting a bribe under color of official right in violation of 18 U.S.C. § 1951 and resulting sentence. The district court sentenced Bush to concurrent two year sentences on both counts, suspended all but five months of the sentences, and placed Bush on five years probation commencing with his release from confinement. The court also imposed the following terms and conditions as part of Bush's sentence: 1) that he publicly resign his position as an alderman of the city of East St. Louis at a city council meeting; 2) that he work at HUD–Housing Authority for eight hours a week for six months; 3) that he pay a fine of $2,000 prior to the expiration of his term of probation. We affirm.

* The Honorable James B. Parsons, Senior District Judge for the Northern District of Illinois, is sitting by designation.

## I.

In 1983, Bush was an alderman representing the fourth ward in the city council of the city of East St. Louis, Illinois. In that position, Bush was in a position to influence awarding of contracts in the city of East St. Louis, Illinois. On August 19, 1983, Robert Fulton Jacox, an East St. Louis businessman, allegedly gave Bush approximately $250 to secure Bush's recommendation to the city council to award Jacox a weed cutting contract. It was alleged that on November 1, 1983 Jacox again paid Bush $750 to gain Bush's recommendation that Jacox receive a weed cutting contract and a city demolition contract. At the time Jacox made each of the payments to Bush, he was assisting the F.B.I.'s [1] investigation of alleged corruption in the East St. Louis city government. Prior to each of Jacox's meetings with Bush on August 19, 1983 and November 1, 1983 FBI agents wired Jacox with an electronic recording device and provided Jacox with the cash payments for Bush.

Upon the completion of the investigation, Bush was indicted on August 27, 1985 on two counts of extorting a bribe under color of official right in violation of 18 U.S.C. § 1951. Prior to Bush's indictment, FBI Special Agent Donald Egelston went to Bush's home on March 28, 1985, identified himself as an FBI agent, and told Bush that the FBI had evidence that Bush had received a $750 payment from Jacox to influence the awarding of the city weed cutting contract. Bush admitted receiving money from Jacox, but insisted that it was only $450. At trial, Egleston stated that "Mr. Bush advised me at that time that he did receive what he believed to be $450 and not $750 from Mr. Jacox."

After Bush was indicted, counsel for Bush entered an appearance, Bush subsequently pleaded guilty, and the court accepted the guilty plea to one count of the two count indictment in exchange for the government's agreement to dismiss the remaining count at the time of Bush's sentencing. After retaining the services of another attorney Bush moved to withdraw his previous plea of guilty; and the trial court vacated the entry of Bush's plea of guilty on November 1, 1985 and set November 12 as the date of Bush's trial. The date for Bush's trial was later adjourned to November 20. On November 18, two days prior to trial, Bush's second attorney made a request for the discovery material in the U.S. Attorney's files. The government had previously provided Bush's prior counsel with all of the material in its files pertaining to Bush, but apparently Bush's second attorney either failed to request or did not receive the complete file from the former counsel. The U.S. Attorney agreed to reproduce his entire file and made it available the next morning to Bush's attorney. On November 20, the day of trial, Bush's attorney moved for a continuance, claiming that he just received the material pertaining to Bush from the government's files and thus was unable to properly prepare for trial. The trial court denied the motion. Bush proceeded to trial, and the jury returned a verdict of guilty on both counts of the indictment finding Bush guilty of extortion under the color of official right in violation of 18 U.S.C. § 1951. Bush appeals.

## II.

Bush initially argues that the district court's refusal to grant him a further continuance prior to trial deprived him of due process and equal protection under the law. Bush argues that he was prejudiced because his new counsel did not have sufficient time to prepare an adequate defense in that his substitute counsel had just obtained additional copies of the discovery materials on the eve of his trial, November 19, 1985.[2] When the trial judge heard Bush's motion for an adjournment immediately prior to trial, it was revealed that 1) Bush's second attorney had failed to request the discovery material from the government until two days before trial,

---

1. The acronym F.B.I. refers to the Federal Bureau of Investigation.

2. The discovery material provided to Bush's attorney consisted of approximately 400 typed pages, three one half hour tapes, and a videotape of 35 minutes duration.

even though he had been representing Bush for about six weeks prior to that date, and 2) that the government had previously provided Bush's first attorney with all the discovery material in its files immediately after Bush's arraignment in August, 1985. The district judge denied Bush's motion for a continuance on the date of trial ruling that had Bush's counsel followed the proper professional procedure and secured the discovery materials from prior counsel or in lieu thereof made a timely demand of the U.S. Attorney for the materials he would have had adequate time to prepare for trial and that he [the district judge] had a responsibility to keep his own docket current.

In *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940) the United States Supreme Court stated:

> "In the course of trial, after due appointment of competent counsel, many procedural questions necessarily arise which must be decided by the trial judge in light of facts then presented and conditions then existing. Disposition of a request for a continuance is of this nature and is made in the discretion of the trial judge, the exercise of which will ordinarily not be reviewed."

*Id.* at 446, 60 S.Ct. at 322. *See also, United States v. Darby*, 744 F.2d 1508, 1521 (11th Cir.1984) (quoting *Avery*); *United States v. Miller*, 573 F.2d 388, 394 (7th Cir.1978) (stating that "[i]t is well established that such decisions [whether to grant a continuance] are left to the discretion of the trial court and are not reversed except upon a showing of abuse of that discretion"); *United States v. Uptain*, 531 F.2d 1281, 1285 (5th Cir.1976) (citing *Avery*). In *United States v. Uptain*, 531 F.2d 1281 (5th Cir.1976), the Fifth Circuit stated:

> "A motion for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of that discretion. This issue must be de-

cided on a case by case basis in light of the circumstances presented, particularly the reasons for continuance presented to the trial court at the time the request is denied."

*Id.* at 1285–86. In *Uptain*, the court listed the factors that a court should consider in deciding whether to grant or deny a motion for a continuance based on an allegation that the defendant had inadequate time to prepare his defense. The court stated:

> "We have deemed the following factors highly relevant in assessing claims of inadequate preparation time: the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution. We have also explicitly considered the adequacy of the defense actually provided at trial, the skill and experience of the attorney, any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime, and any representation of the defendant by other attorneys that accrues to his benefit."

531 F.2d at 1286–87 (footnotes omitted).

■ In considering the factors enumerated above we note that: 1) Bush was arraigned on August 29, 1985 almost three months prior to his trial and thus had three months to prepare his defense; 2) Bush's case was neither factually nor legally complicated in that it involved two counts of the same offense, one defendant and lasted three days;[3] 3) the government had previously provided Bush's first counsel with all of the pertinent materials in its files but for some unknown reason Bush's second attorney failed to obtain the materials from Bush's first attorney; and 4) Bush's second attorney had six weeks to prepare for trial. Thus, had Bush's second attorney diligently pursued Bush's defense he would not have felt compelled to request a continu-

---

3. Richard Younge, the attorney for Bush at trial and on appeal, failed to order and supply this court with the entire transcript of Bush's trial. Thus, any argument that Bush was entitled to a

further continuance because his case was factually complicated is without support in the record before us.

ance on the eve of trial in that he had six weeks to prepare. We find nothing in the record to establish that Bush suffered any prejudice from the district court's denial of his motion for a continuance.

In *United States ex rel. Kleba v. McGinnis,* 796 F.2d 947, 952 (7th Cir.1986), we noted that "trial courts have a responsibility to keep their calendars as current as possible." In *Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601 (7th Cir.1986), we stated that:

> "Trial judges have a responsibility to litigants to keep their court calendars as current as humanly possible. This is not an easy task in view of the nearly impossible demands placed on trial judges in the overburdened federal court system. For example, in the twelve-month period ending June 30, 1985, a total of 1,994 cases (both civil and criminal) were filed in the U.S. District Court for Central District of Illinois. Divided among the three district judges in the Central District, each judge is responsible for approximately 665 of the new cases filed in that time period, and as of June 30, 1985, the average number of cases pending on a district judge's calendar was 643. Thus, if a trial judge does not closely monitor his calendar and prevent needless delay, he would soon be buried beneath the pending case load."

*Id.* at 608. "It is critically important that a trial court be able to maintain control over its calendars and that a trial date once set must be adhered to unless there are compelling reasons for granting a continuance." *Stevens v. Greyhound Lines, Inc.,* 710 F.2d 1224, 1230 (7th Cir.1983). We hold that the trial court did not abuse its discretion in refusing to grant Bush a continuance and, therefore, did not deprive Bush of due process.

## III.

■ Bush next contends that the trial court erred in denying his motion to suppress his admission to FBI Agent Donald Egelston that he (Bush) had accepted money from Jacox. Bush contends that this evidence should have been suppressed since Egelston questioned Bush about his illicit activities without having previously advised him of his *Miranda* rights and warnings as well as informing him of his right to remain silent. See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444, 86 S.Ct. at 1612 (emphasis added). The Court continued to state that *"[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.* (emphasis added). The government contends that Egelston was not required to read Bush his *Miranda* warnings prior to talking with him as Bush was neither in custody nor under arrest. The record discloses that Bush freely discussed the case with the agent in the privacy and comfort of his own home, and he was free to either walk away or to ask Egelston to leave.

In *California v. Beheler,* 463 U.S. 1121, 1124, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983), the Supreme Court stated: "The police are required to give [*Miranda*] warnings only 'where there has been such a restriction on a person's freedom as to render him in custody.'" (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977)). The Supreme Court went on to state in *Beheler* that "Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Id.* 463 U.S. at 1125, 103 S.Ct. at 3520 (quoting *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714).

In *United States v. Scott,* 590 F.2d 531, 533 (3rd Cir.1979) agents of the Bureau of Alcohol, Tobacco and Firearms visited the home of the defendant (who was on parole) regarding his possession of an illegal firearm. After the defendant permitted the agents to enter, they told Scott that his parole officer had informed them he had an illegal weapon and asked to see it. The defendant admitted he had a weapon but denied it was illegal. There was conflicting testimony as to whether the defendant was given *Miranda* warnings at his house. A jury found him guilty of both illegal possession and illegal manufacture of a firearm. On appeal the Third Circuit held that no *Miranda* warnings were required at the defendant's house since he was "neither under arrest nor was his freedom of action restricted in any significant way." *Id.* at 533.

In the instant case, Bush was neither under arrest nor were there any restraints on his freedom of movement. He was free to ask Agent Egelston to leave his home or walk away himself. We hold that Agent Egelston was not required to give Bush *Miranda* warnings in the privacy of his own home since Bush was neither under arrest nor was his freedom of movement impaired.

### IV.

■ Bush also appeals his sentence alleging that the trial court imposed the sentence in order to penalize Bush for proceeding to trial with his case. Bush speculates and points to nothing in the record in support of his argument. In *United States v. Willard,* 445 F.2d 814 (7th Cir.1971), we stated:

"It is well established that sentencing judges have a wide discretion in determining the appropriate punishment within the limits of various federal statutes and that as a matter of the appellate court's supervisory control, the exercise of such discretion will not be disturbed on appeal except on a plain showing of gross abuse."

*Id.* at 816. *See also United States v. Ledesma,* 632 F.2d 670, 679 (7th Cir.1980).

Pursuant to 18 U.S.C. § 1951, the trial court could have imposed a $10,000 fine and sentenced Bush to a twenty-year term of imprisonment for each of the two counts of extortion for which Bush was convicted. The trial court imposed a $2,000 fine and sentenced Bush to concurrent two years terms but suspended all but five months of these sentences. In addition, the court placed Bush on five years probation, commencing with his release from confinement, required him to relinquish his position as alderman, and ordered Bush to work for the HUD–Housing Authority in East St. Louis for eight hours per week for six months. Bush's sentence was thus within the statutory limits of 18 U.S.C. § 1951. In *United States v. Hoffman,* 806 F.2d 703 (7th Cir.1986), we stated that "[t]his Court 'may not change or reduce a sentence imposed within the applicable statutory limits on the grounds that the sentence was too severe unless the trial court relied on improper or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence.'" *Id.* at 713 (quoting *United States v. Fleming,* 671 F.2d 1002, 1003 (7th Cir.1982). *See also United States v. Schmidt,* 760 F.2d 828, 833 (7th Cir.1985); *United States v. Ely,* 719 F.2d 902, 906 (7th Cir.1983). Since Bush has failed to demonstrate that the trial court relied on improper or unreliable information in exercising its discretion in sentencing, and because the sentence was within statutory limits our appellate review of Bush's sentence is "at an end." *United States v. Madison,* 689 F.2d 1300, 1312 (7th Cir.1982) (quoting *United States v. Main,* 598 F.2d 1086, 1094 (7th Cir. 1979)). *See also United States v. Torres,* 809 F.2d 429, 445 (7th Cir.1987). We hold that the trial court's sentence was well within the statutory limits and proper.

### V.

Bush's conviction for violating 18 U.S.C. § 1951, two counts of extortion under color of official right, and the sentences imposed are affirmed.