74 F.3d 1242
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin RUSSELL, Defendant-Appellant.
 No. 95-2156.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 15, 1995.
Decided Jan. 18, 1996.
 
 Before EXCHBACH, MANION, and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Kevin Russell pleaded guilty to bank fraud and was sentenced to 70 months in prison. A year later, the district court denied the government's Rule 35(b) motion to reduce Russell's sentence by fifty percent. Russell now appeals that decision, arguing that the district court's decision amounted to a failure to exercise any discretion. Because the district court clearly considered and rejected the appropriateness of the government's motion, we affirm the district court's decision.
 
 Facts
 
 2
 While incarcerated at Shawnee Correctional Center on charges of theft by deception, Kevin Russell purchased counterfeit cashier's checks from John Smith. Russell then gave the counterfeit checks to Toni Penson to deposit. The FBI caught Penson, who implicated Russell. Russell, in turn, implicated Smith as the source of the counterfeit checks. As part of his cooperation with the FBI's investigation of Smith, Russell allowed the FBI to tape phone conversations between himself and Smith, and convinced Smith to deliver some counterfeit cashier's checks to an undercover FBI agent.
 
 
 3
 On January 18, 1994, Russell pleaded guilty to one charge of bank fraud under 18 U.S.C. Sec. 1344. Based on the offense and Russell's criminal history, the Sentencing Guidelines provided for a range of 70-87 months in prison. On March 30, 1994, the district court sentenced Russell to 70 months in prison. Although Russell had an extensive criminal history, the court sentenced at the low end of the range largely because of Russell's assistance to the FBI in investigating and apprehending Smith.
 
 
 4
 The FBI arrested Smith sometime between Russell's guilty plea and sentencing hearing. Smith did not plead guilty to bank fraud, however, until after Russell was sentenced. On March 30, 1995, the government submitted a motion pursuant to Fed.R.Civ.P. 35(b) requesting that the court reduce Russell's sentence by fifty percent. Russell submitted a memorandum in support of the government's motion. The court denied the motion, and this appeal followed.
 
 Standard of Review
 
 5
 Our review of a district court's grant or denial of a Rule 35(b) motion is "extremely limited." United States v. Makres, 937 F.2d 1282, 1286 (7th Cir.1991) (quoting United States v. Rovetuso, 840 F.2d 363, 365 (7th Cir.), cert. denied, 484 U.S. 903 (1987)). " 'This Court may not change or reduce sentences imposed within the requisite legislative limits on the ground that the sentence is too severe, unless the trial court failed to exercise any discretion at all in imposing the sentence.' " United States v. Plain, 856 F.2d 913, 917-18 (7th Cir.1988) (quoting United States v. Bush, 820 F.2d 858, 862 (7th Cir.1987) (citations omitted)).
 
 Analysis
 
 6
 Russell raises only one issue on appeal: he contends that the district court failed to exercise any discretion in denying the government's Rule 35(b) motion. Russell argues that at his sentencing hearing the district court considered only his cooperation up to that point, and that in denying the government's Rule 35(b) motion, the court ignored his assistance to the government between his sentencing and the time of the motion. Russell thus claims that he is the victim of bad timing: that had Smith pleaded guilty before Russell was sentenced, the government would have moved for and he (Russell) would have received a downward departure from the Sentencing Guidelines pursuant to U.S.S.G. Sec. 5K1.1. Without the benefit of the Rule 35(b) motion, Russell concludes, he will not receive his reward for helping the government successfully prosecute Smith.
 
 
 7
 Russell chooses to ignore the consideration the district court has already given him for his cooperation. First, Russell successfully parlayed his cooperation into a reduced offense level. At his sentencing hearing, the government moved to deny Russell an offense level reduction he claimed for acceptance of responsibility, arguing that Russell initially lied to the FBI concerning the counterfeit check scheme and that this prevarication foreclosed any reduction for acceptance of responsibility. In response, Russell countered that because the government was not moving for a downward departure from the Guidelines range, it would be unfair not to treat his cooperation with the FBI as "acceptance of responsibility." The court agreed with Russell's argument, and for that reason granted him a two-point reduction in his offense level.
 
 
 8
 Second, and most significantly, the district court gave Russell full credit for his cooperation with the government by sentencing him to the low end of the range provided for in the Guidelines. Russell's attorney argued that "in light of the fact that there is no downward departure, the defendant should definitely get the benefit of the absolute low end of [the applicable sentencing range]." The court agreed:
 
 
 9
 I see, Mr. Russell, that you have 15 prior arrests, 8 prior convictions, many of them for fraud-related and theft-related conduct, and you have virtually no employment history. That is a very negative picture for a man of 29 years. And so I am very concerned.
 
 
 10
 I do take into account the fact that once you decided to cooperate with the government, it appears that you not only fully cooperated, but your cooperation was very effective. And I think for those reasons I will impose a sentence at the very lowest end of the guideline range.
 
 
 11
 I will tell you, however, had it not been for your cooperation, I would be imposing a sentence much higher, to the extent I could, within the guideline range.
 
 
 12
 ... I think 70 months is a fair sentence, given your history, but taking into consideration your cooperation.
 
 
 13
 Thus, the court fully took into account Russell's cooperation when it imposed Russell's original sentence.
 
 
 14
 Third, Russell's argument on appeal grossly overstates the amount of the aid he rendered to the government after he was sentenced. Indeed, almost all of the assistance the government lists in its Rule 35(b) motion occurred before Russell was sentenced:
 
 
 15
 Mr. Russell made tape recorded phone calls ordering two $150,000 counterfeit cashier's checks from Mr. Smith. In addition, [Russell's] tape recorded conversations resulted in the introduction of two undercover FBI agents to Mr. Smith. Mr. Smith delivered the counterfeit checks to an undercover FBI agent. Subsequently, Mr. Smith pled guilty to one count of bank fraud.... Mr. Russell identified Mr. Smith as his source of [counterfeit] checks at a time when the government was unaware of the identity of the source.
 
 
 16
 Of all the facts listed, the only act that occurred after Russell's sentencing was Smith's guilty plea. At best, then, the only assistance Russell provided after he was sentenced was his continued willingness to testify against Smith.
 
 
 17
 Russell argues that at his sentencing hearing the court could not have known--and thus could not have considered--the value of his post-sentencing assistance to the government. But Smith already had been arrested, the FBI had considerable physical evidence against him, and Russell's plea bargain required him to testify against Smith. Moreover, the district court's description of Russell's cooperation as "full[ ]" and "very effective" suggests that the court anticipated that Russell would follow through on his plea agreement and testify. There is no reason that the district court could not have concluded from these facts that Smith likely would be convicted.
 
 
 18
 Furthermore, the language from the district court's denial of the Rule 35(b) motion indicates that it had considered the value of Russell's testimony when it originally passed sentence:
 
 
 19
 The information supporting the [government's Rule 35(b) ] motion was explicitly considered by the court before imposing a sentence at the low end of the guideline range, even though the defendant's conduct and criminal history warranted a sentence at the highest end of the range.
 
 
 20
 Having thus credited Russell for his full cooperation in prosecuting Smith, the district court did not fail to validly exercise its discretion in refusing to further reduce Russell's sentence based on the same assistance.
 
 
 21
 It is worth noting that, had the district court not given Russell the two-point reduction for acceptance of responsibility, he would have faced a sentencing range of 84-105 months. And according to the court, had it not credited Russell for his cooperation, it would have sentenced him to the high end of that range. Thus, Russell has already had his sentence reduced from a possible 105 months to 70 based upon his assistance to the government. More to the point, Russell argued that he was entitled to those reductions because he was not getting a downward departure from the Guidelines. Russell would be doubly rewarded if he could now argue for further reductions. The district court therefore did not fail to exercise its discretion when it concluded that any value of Russell's post-sentencing cooperation was too minimal to justify still further reductions in Russell's sentence.
 
 
 22
 Finally, the district court offered two additional reasons for denying the government's Rule 35(b) motion:
 
 
 23
 The court further finds that reducing the defendant's sentence by one-half would seriously denigrate the seriousness of his conduct and would ignore the significant likelihood of recidivism explicitly considered by the court at sentencing.
 
 
 24
 Given that Russell orchestrated his check fraud scheme while in prison for theft by deception, the court was justifiably concerned with the seriousness of his offense and his likelihood of recidivism. Thus, even if Russell were otherwise entitled to a reduction in his sentence, these reasons would be independently sufficient to support the court's denial of the Rule 35(b) motion and put to rest any claim that the court failed to exercise its discretion.
 
 Conclusion
 
 25
 The record clearly shows that the district court exercised its discretion in this case. The court considered the value of Russell's pre- and post-sentencing assistance, the seriousness of his crime, and the punishment necessary for deterrence. In light of these factors, the court rejected the government's motion. Because the district court neither abused nor failed to exercise its discretion, the ruling of the district court is AFFIRMED.