**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-4003
_____

UNITED STATES OF AMERICA

v.

JOSEPH BRODIE,
                    Appellant


_____

Appeal from the United States District Court
for the District of New Jersey
(No. 1-18-cr-00162-001)
District Judge: Honorable Noel L. Hillman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 10, 2020

Before: McKEE, BIBAS, and FUENTES, *Circuit Judges*.

(Filed: August 21, 2020)
_____

OPINION[**]
_____

---

[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Joseph Brodie appeals his conviction and sentence for two counts of threatening to assault and murder a United States congressman.[1] Brodie was sentenced to 87 months' imprisonment for each offense, to be served concurrently. For the following reasons, we will affirm.

## I. Background

Brodie is a decorated war veteran who served in both the United States Marine Corps and the Army. In 2003, Brodie was seriously wounded while serving as a machine gunner in Iraq. He suffered a traumatic brain injury, seizure disorder, hearing damage, migraines, and post-traumatic stress disorder. These conditions require ongoing medical care. When Brodie later moved to New Jersey in 2017, he encountered multiple obstacles in receiving care from the Veteran's Health Administration and Veteran's Benefits Administration (collectively, the "VA").

Brodie learned that New Jersey Congressman Frank LoBiondo was an advocate for veterans, and he contacted the Congressman's office for assistance. The Congressman's staffer and veterans' liaison Michael Francis was tasked with aiding Brodie. The pair spoke regularly, but the relationship steadily declined. In September 2017, Brodie made various threats to Francis and others through e-mails and a phone call. At one point, Brodie sent an e-mail asking for a face-to-face meeting with Congressman LoBiondo, attaching a Google Earth image showing the location of the Congressman's

---

[1] 18 U.S.C. §§ 115(a)(1)(B) and (b)(4) (2018).

office. That same evening, Brodie told his fiancée that he wanted to die in a gun fight. He also admitted to threatening the life of the Congressman's Chief of Staff, Jason Galanes, and stated he was not "going down without a fight."[2] Concerned, his fiancée asked the New Jersey state police to perform a welfare check on Brodie.

The state troopers arrived at Brodie's residence. Brodie exited his home with a firearm in hand. He explained that he did not want to shoot the officers, and instead, put the firearm into his own mouth, sank to his knees, and pulled the trigger. Twice the weapon failed to discharge. At that point, Brodie surrendered. He was taken into custody, read his *Miranda* rights, and eventually given a mental health evaluation. Several days later, Brodie was interviewed by the FBI. He was again read his *Miranda* rights, at which point he executed a written waiver of those rights. Brodie gave an inculpatory statement during the interview.

He was indicted and charged with two counts of threatening to assault and murder a Congressman and his staffers. At trial, Brodie was convicted on both counts and sentenced to 87 months' imprisonment. His timely appeal followed.

## II. Discussion

Brodie raises three issues on appeal.[3] First, he argues that the District Court erred in denying his motion to suppress. Second, he asserts that it was error for the District Court to apply sentencing enhancements under United States Sentencing Guidelines

---

[2] App. 315.
[3] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

§§ 2A6.1(b)(1) and 3C1.1.[4]  Third, he contends that the District Court erred in failing to grant certain downward departures or variances at sentencing.  We will address each issue in turn.

## A. Motion to Suppress

Brodie filed a pretrial motion to suppress the statement he gave to the FBI on the grounds that he had previously invoked his right to counsel.  Before the District Court, he contended that the invocation occurred when the state troopers arrived at his residence and he told them: "No warrant, no lawyer, no talky[.]"[5]  He also argued that after he was taken into custody, he "repeatedly requested to have a lawyer" and asked "[a]ny and every officer that walked into the holding cell" for "a phone call to call for a lawyer."[6]  He now argues that any waiver of his *Miranda* rights before speaking to the FBI was invalid, and it was error for the District Court to conclude otherwise.[7]

The District Court held a suppression hearing to evaluate Brodie's assertions.  At the hearing, seven officers testified that Brodie neither asked for an attorney, nor stated that he wanted to remain silent.  The testimony covered the officers' initial arrival at Brodie's home, Brodie's transportation to the state police barracks, the administration of his *Miranda* warnings once criminal charges were approved, Brodie's transportation from

---

[4] U.S. Sentencing Guidelines Manual § 2A6.1(b)(1) (U.S. Sentencing Comm'n 2018) (hereinafter, "U.S.S.G."); U.S.S.G. § 3C1.1.

[5] App. 40.

[6] App. 43; 41.

[7] In reviewing the denial of a suppression motion, we "review findings of fact for clear error, but we exercise plenary review over legal determinations." *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012).

the police station to the hospital for a mental health evaluation, and his overnight stay at the hospital. The District Court denied Brodie's motion, expressly crediting the officers' testimony and discrediting Brodie's contrary testimony and that of his fiancée, who testified that during a brief phone call, Brodie instructed her to find him an attorney.

As the District Court correctly determined, Brodie was not in custody when the officers first arrived at his house; thus no *Miranda* warnings were required.[8] And it is undisputed that he executed a written waiver of his *Miranda* rights before speaking with the FBI. Moreover, the evidence at the suppression hearing amply supported the District Court's credibility findings.[9] As such, there is no reason to disturb the District Court's findings that Brodie never invoked his right to counsel and validly waived that right before speaking to the FBI.[10]

## B. Sentencing Enhancements

Brodie next contends that the District Court incorrectly applied two Sentencing Guidelines enhancements. He first argues that the District Court erred in increasing his

---

[8] *See United States v. Scott*, 590 F.2d 531, 532-33 (3d Cir. 1979) (finding that defendant was not in custody even though parole agents went to his home in response to a report that he possessed an unregistered firearm and stated, "[l]et us in and then we'll talk, or we'll go and get a paper and come back and we'll get you.").

[9] *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").

[10] *See United States v. Beckett*, 208 F.3d 140, 148 (3d Cir. 2000) ("[W]here the District Court's findings are based on credibility determinations, the rule 'demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" (quoting *Anderson*, 470 U.S. at 575)).

offense level for conduct demonstrating an intent to carry out a threat because the conduct used to support the enhancement was the same conduct that constituted the threat he was convicted of making.[11]

Under § 2A6.1(b)(1), a six-level increase to a defendant's offense level is permitted when the defendant is convicted of a crime of threatening communications that also "involve[s] any conduct evidencing an intent to carry out such threat."[12] The trial court may consider conduct committed before and during the offense that is "substantially and directly connected to the offense, under the facts of the case taken as a whole."[13] We require a defendant to engage in some overt act to warrant a § 2A6.1(b)(1) enhancement.[14]

Brodie argues that the basis for the enhancement was an e-mail he sent that included an attachment of a Google Earth image pinpointing the Congressman's New Jersey office. He claims that the image cannot be evidence of intent when the e-mail in its entirety was evidence of the threat for which he was convicted. However, he overlooks the fact that the District Court identified five factors, including the image, in support of the enhancement.

---

[11] U.S.S.G. § 2A6.1(b)(1). We exercise plenary review over the District Court's interpretation and application of the Sentencing Guidelines and review its factual findings for clear error. *United States v. Figueroa*, 105 F.3d 874, 875-76 (3d Cir. 1997).
[12] U.S.S.G. § 2A6.1(b)(1).
[13] *Id.* at cmt. n.1.
[14] *See United States v. Green*, 25 F.3d 206, 211 (3d Cir. 1994) (concluding a defendant's request that his police officer friend run a license plate check of his victim constituted an overt act).

First, attaching an image of the area surrounding the Congressman's office indicates an action beyond a mere internet search for the address of someone's office location. In the e-mail, Brodie explained that the image showed "the environment and surrounding terrain, parking lots, wooded areas, et cetera, like the kind a highly trained combat infantryman would use."[15] Second, Brodie threatened to commit an act of gun violence, while possessing multiple firearms and ammunition.[16] Third, he made statements to Galanes suggesting that he was tracking his whereabouts. Fourth, he made similar statements regarding the Congressman and other staffers.[17] Finally, Brodie's fiancée testified that during a telephone conversation, Brodie told her he had the address for the Congressman's New Jersey office in his GPS and was going to kill Galanes. Collectively, these facts support an enhancement under § 2A6.1(b)(1), and there is no indication of clear error.

Brodie also argues that the District Court erred in increasing his base offense level for conduct evidencing the obstruction of justice. The District Court applied the enhancement because it determined that Brodie testified untruthfully when he asserted

---

[15] Supp. App. 65; App. 301; *see United States v. Bohanon*, 290 F.3d 869, 875 (7th Cir. 2002) (concluding threatening letters supported an inference of intent to carry out the threats, as one letter referenced in detail the location where the defendant planned to harm the victim as a location the victim routinely frequented).

[16] *See United States v. Kirsh*, 54 F.3d 1062, 1073 (2d Cir. 1995) (finding intent where there was a connection between the language of threats and weapons purchased by defendants); *see also United States v. Carter*, 111 F.3d 509, 513-14 (7th Cir. 1997) (affirming enhancement where "[t]he fact that [the defendant] actually owned and carried firearms shows an easy ability to carry out his threatened violence, making his threats more than mere puffery.").

[17] *See United States v. Gary*, 18 F.3d 1123, 1128 (4th Cir. 1994) (finding intent, in part, from threatening letters containing information of victim's whereabouts).

that he (i) invoked his right to counsel; and (ii) received pornographic images from Francis. A two-level enhancement is permitted under § 3C1.1 when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution or sentencing of the instant offense of conviction."[18]

We are wary of such an enhancement applied where, as here, the defendant is purportedly unmedicated and in mental distress, and where the evidence of perjury amounts to Brodie's testimony against that of the state troopers, rather than other concrete evidence.[19] To be sure, the District Court diligently evaluated Brodie's suppression motion. But given the potential influence of Brodie's psychological distress, there remains a possibility that he did not willingly give false testimony. Additionally, his claim that he received pornographic images from Francis is not material to the offense for which he was convicted.[20]

---

[18] U.S.S.G. § 3C1.1.

[19] *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (holding that § 3C1.1 enhancement is appropriate only where the defendant acts "with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory."); *United States v. Powell*, 113 F.3d 464, 467-68 (3d Cir. 1997) (upholding the trial court's finding that defendant's testimony was false in light of substantial evidence that contradicted his testimony); *see also United States v. Agudelo*, 414 F.3d 345, 350 (2d Cir. 2005) (finding § 3C1.1 enhancement misapplied where the trial court declined to credit defendant's affidavit that he asked for a lawyer during his post-arrest interview because such an application overlooked the possibility that defendant may have been mistaken about aspects of his testimony).

[20] *See United States v. Belletiere*, 971 F.2d 961, 968 (3d Cir. 1992) (holding § 3C1.1 is not applicable where a defendant is convicted on charges but makes false statements on a matter having "nothing to do with the offenses for which he was convicted," and which were not material to nor impeded the government's investigation); *see also Powell*, 113 F.3d at 468 ("We have held U.S.S.G. § 3C1.1 applies only when a defendant has made

However, even if the enhancement strikes us as critical of a defendant with known medical and mental conditions, its application does not rise to the level of clear error.[21] While Brodie attempted to show that his medical conditions caused a diminished mental capacity entitling him to a departure, he did not proffer such evidence as it relates to the § 3C1.1 enhancement.[22] Moreover, the District Court found the testimony of Brodie's medical expert unpersuasive because of inconsistencies in the record. And Brodie's testimony on the invocation of counsel was not "vague."[23] Indeed, he claimed to recall his exact words: "No warrant, no lawyer, no talky[.]"[24] Furthermore, even without the enhancement, Brodie's sentence would still be within the applicable Sentencing Guidelines range.

## C. Downward Departure/Variance

Lastly, Brodie argues that the District Court erred in failing to grant a downward departure and/or variance based on the fact that his criminal history overrepresented the

---

efforts to obstruct the investigation, prosecution, or sentencing of 'the offense of conviction.'" (quoting *United States v. Kim*, 27 F.3d 947, 958 (3d Cir. 1994))).

[21] *See United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (reasoning that a finding is clearly erroneous, despite evidence supporting it, when the reviewing body "'is left with the definite and firm conviction that a mistake has been committed'" (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993))).

[22] *See United States v. Altman*, 901 F.2d 1161, 1165 (2d Cir. 1990) (reasoning that a defendant's medical condition may have deprived him of the ability to act willfully and remanding for consideration of proffered medical evidence).

[23] *Compare Agudelo*, 414 F.3d at 350, *with United States v. Lincecum*, 220 F.3d 77, 79-80 (2d Cir. 2000) (affirming application of § 3C1.1 enhancement where defendant "gave a detailed account of at least three such requests [to speak with an attorney].").

[24] App. 40.

9

seriousness of his history,[25] and on the basis of his military service[26] and physical and mental condition.[27]

At the outset, we find that we do not have jurisdiction to review the District Court's denial of Brodie's departure motions. The District Court in no way indicated that a departure was legally impermissible, and instead demonstrated that its decision not to depart was based on a well-reasoned exercise of discretion.[28] To the extent that Brodie separately challenges the District Court's denial of a downward variance, any such challenge is meritless. The District Court clearly identified the 18 U.S.C. § 3553(a) factors and explained why it declined to grant a downward variance based on each of the mitigating circumstances advanced by Brodie.

## IV. Conclusion

The challenges Brodie dealt with in obtaining health care are an unfortunate example of what many veterans experience. Nevertheless, the circumstances do not entitle him to relief. Accordingly, we will affirm the District Court's judgment.

---

[25] U.S.S.G. § 4A1.3(b).
[26] U.S.S.G. § 5H1.11.
[27] U.S.S.G. §§ 5H1.3 and 1.4. We review a criminal sentence for abuse of discretion. *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011).
[28] *See United States v. Rodriguez*, 855 F.3d 526, 531-32 (3d Cir. 2017) (explaining that our § 1291 jurisdiction may be limited in some cases by 18 U.S.C. § 3742, unless a sentence is shown to be unreasonable and imposed in violation of the law); *see also United States v. Ruiz*, 536 U.S. 622, 627 (2002) ("Every Circuit has held that [§ 3742(a)] does *not* authorize a defendant to appeal a sentence where the ground for appeal consists of a claim that the district court abused its discretion in refusing to depart.").