**UNITED STATES of America ex rel. Donald C. VILLA, Petitioner-Appellant,**

**v.**

**J.W. FAIRMAN and Neil F. Hartigan, Respondents-Appellees.**

**No. 86–1758.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1986.

Decided Jan. 28, 1987.

Rehearing and Rehearing En Banc Denied April 9, 1987.

Cudahy, Circuit Judge, concurred in part, dissented in part, and filed opinion.

Frederick F. Cohen, Frederick F. Cohen, Ltd., Chicago, Ill., for petitioner-appellant.

Kenneth A. Fedinets, Office of Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

While trying to make his getaway from an armed robbery, Donald Villa ran into officer Louis Jogmen of the Tinley Park, Illinois, police. Villa disarmed and handcuffed Jogmen and held two guns on him—Villa's and Jogmen's own. Villa shot Jogmen; officer Allen Bechtel shot Villa. Jogmen is disabled by a serious brain injury, despite nine operations. Villa became a quadriplegic. At Villa's trial for attempted murder and other crimes, the principal issue was whether Villa had shot Jogmen deliberately or reflexively as a result of his own injury. The jury convicted Villa, and the judge sentenced him to 30–90 years' imprisonment. The conviction for attempted murder was affirmed, *People v. Villa*, 93 Ill.App.3d 196, 48 Ill.Dec. 704, 416 N.E.2d 1226 (1st Dist.1981), setting the stage for Villa's petition for a writ of habeas corpus.

The prosecutor used three kinds of evidence to show that Villa shot Jogmen deliberately. Several witnesses testified that Villa abused Jogmen verbally for an extended period, repeatedly threatening to blow his head off. Gwenda Sangren testified that she heard two distinct shots, the first from Villa's direction, implying that Villa shot Jogmen before Bechtel shot Villa. And an expert witness testified that Jogmen's .357 magnum—which was uncocked and therefore according to testimony could not have been fired in a reflex action—had powder residue, suggesting a recent discharge. (Surgeons concluded that removing the bullet from Jogmen's brain would do more damage than leaving it there, so it was not possible to determine from ballistics evidence whether the bullet came from a .357 magnum rather than Villa's .38 revolver.) Villa's lawyer responded by trying to exclude most of Villa's statements as unduly prejudicial (they were admitted anyway), by showing that Sangren may have made a prior inconsistent statement (and that no other witness heard distinct shots), and by demonstrating that Villa's revolver contained a spent cartridge (while no evidence shows that Jogmen's magnum contained a spent cartridge).

On appeal in the state court, Villa's lawyer challenged on state-law grounds the court's decision not to give the jury an instruction on how to evaluate Sangren's supposedly inconsistent statements. The appellate court rejected this claim because, it concluded, Sangren's statements were not materially inconsistent. 93 Ill.App.3d at 202, 48 Ill.Dec. 704, 709, 416 N.E.2d at 1231. Villa's lawyer did not object, either at trial or on appeal, to the sketchy evidence that the magnum had been fired. Villa now complains on constitutional grounds about both the omission of the

instruction and the use of the evidence about the magnum.

■ The problem is forfeiture under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). One contention was raised, but not in constitutional terms, cf. *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 454 (7th Cir.1984); the other was not raised at all. Illinois enforces requirements of both contemporaneous objection and appellate presentation; as a matter of state law, both contentions have been forfeited and may not now be raised. *Cartee v. Nix,* 803 F.2d 296, 300–01 (7th Cir.1986); *People v. Carlson,* 79 Ill.2d 564, 576–78, 38 Ill.Dec. 809, 814–15, 404 N.E.2d 233, 238–39 (1980); *People v. Myers,* 85 Ill.2d 281, 290–91, 55 Ill.Dec. 389, 393, 426 N.E.2d 535, 539 (1981). Cf. *Barrera v. Young,* 794 F.2d 1264, 1267–69 (7th Cir.1986). Villa's lawyer in the federal action for habeas corpus tried to get around this problem by arguing that his state lawyer's oversight supplied the "cause" necessary to excuse the default.* At the time, this circuit recognized oversight as "cause". *Gray v. Greer,* 778 F.2d 350 (7th Cir.1985), *vacated,* —— U.S. ——, 106 S.Ct. 3328, 92 L.Ed.2d 734 (1986). *Murray v. Carrier,* —— U.S. ——, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986), holds, however, that oversight short of constitutionally ineffective assistance is not "cause" for purposes of *Sykes.* The Supreme Court also has held that neglect to prosecute a constitutional claim on appeal in the state courts itself forfeits the right to raise the claim on collateral attack. *Murray v. Carrier,* 106 S.Ct. at 2647–48; *Smith v. Murray,* —— U.S. ——, 106 S.Ct. 2661, 2665–66, 91 L.Ed.2d 434 (1986). The arguments based on the conduct of the trial therefore are no longer available, unless error so undermined the truth-finding function of the trial that the trial itself was a

violation of the due process clause. See *Murray v. Carrier,* 106 S.Ct. at 2650, creating a limited exception to the forfeiture rule of *Sykes* for errors posing grave risk of convicting an innocent person. The exception does not aid Villa. The merits of this case were vigorously litigated at trial. Sangren was examined and cross-examined. The parties and their experts tussled about the meaning of the evidence concerning the guns. The relevant issues were aired and decided by the jury. The trial was fair, so the more focused claims of error are not grounds to upset the conviction.

■ Villa also challenges his sentence, in three ways. He insists that 30–90 years is unconstitutionally excessive for a quadriplegic, that the conditions of his confinement are inhumane, and that in imposing sentence the judge took into account a false statement by the prosecutor. The first of these avenues is foreclosed for the same reason as the challenges to the conviction: it was not raised at trial or on appeal. Villa contended that as a matter of state law the sentence is excessive, and the appellate court rejected this argument on the merits. 93 Ill.App.3d at 203–04, 48 Ill.Dec. at 710, 416 N.E.2d at 1232. Counsel did not contend that the eighth amendment imposes additional constraints on the duration of the sentence. Again nothing egregious justifies review notwithstanding the lack of "cause" for the omission. Attempted murder in the course of another felony is a heinous crime, and a sentence of 30–90 years is permissible. See *Solem v. Helm,* 463 U.S. 277, 290–93, 103 S.Ct. 3001, 3009–11, 77 L.Ed.2d 637 (1983). No doctrine excuses quadriplegics from punishment that is otherwise appropriate. The contention that quadriplegia is "punishment enough"—like the parricide's claim that he deserves mercy as an orphan—is

---

* Villa has not contended that his state lawyer rendered constitutionally ineffective assistance—not only because such a contention would raise an unexhausted issue and require dismissal of the petition under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), but also because a review of the opinion

in *People v. Villa* reveals that Villa's lawyer was vigorous and presented a number of issues that had greater chance of success than those he is now charged with omitting. Cf. *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

one addressed to the sentencing court's discretion alone. As a practical matter quadriplegics are imprisoned wherever they go. Formal imprisonment does little more than reduce the level of amenities. The eighth amendment does not prevent the state from controlling the amenities available to Villa.

■■■ The argument that the state has confined Villa in inhumane conditions is being made for the second time. In 1979 Villa filed an action under 42 U.S.C. § 1983, contending that the state had confined him in medically unsuitable facilities. *Villa v. Franzen*, 511 F.Supp. 231 (N.D.Ill. 1981) (declining to dismiss the complaint). The § 1983 action was settled in February 1985; the state undertook to supply conditions that Villa agreed to accept. The district judge believed that this settlement made the entire challenge to the sentence "moot". Ours is not a problem of mootness, however—there is an ongoing controversy between Villa and the state. To the extent Villa attacks the conditions of his confinement, the settlement blocks further litigation under principles of issue preclusion. To the extent Villa attacks the length of his sentence, however, principles of preclusion do not apply; the duration of confinement may not be litigated under § 1983 but must be raised separately as a request for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Wolff v. McDonnell*, 418 U.S. 539, 554–55, 94 S.Ct. 2963, 2973–74, 41 L.Ed.2d 935 (1974). Villa is required to split his claim for relief, as he has done, and the settlement of the conditions portion of his claim does not prevent litigation on the duration aspect.

We therefore must address Villa's final argument: that the prosecutor misrepresented to the court the experience the state had in dealing with quadriplegic prisoners, and that the judge based his sentence on a misunderstanding of the medical problems involved. Much of the sentencing proceeding was consumed by a discussion of Villa's quadriplegia, which Villa claimed should lead to mercy. Villa presented witnesses in support of his claim. The prosecutor represented to the court that the Illinois Department of Corrections had 13 quadriplegics in its care and a special facility in which to treat quadriplegics. In imposing sentence the judge stated:

> Although I believe ... that the chances of Donald Villa's physical rehabilitation in modern day medicine is [sic] far greater than the ability to repair the damage done to Officer Jogmen's brain, and the Court has had occasion within the last year to hear a case involving a quadriplegic, had the opportunity to observe the treatment of the victim in that case, and I have been advised from day to day—or month to month so to speak of the progress of the victim under therapy, and all the signs are that in the long run, that he will ultimately gain some use of both of his arms and legs....
>
> I believe that within the years, with the therapy and treatment that can be available to Mr. Villa, his bodily processes can be improved.

The Department had (and has) no special facility to treat quadriplegics; the number of quadriplegics in the state's custody has never been determined; and Villa insists that there is no prospect of his regaining the use of his legs. All in all, he concludes, he was sentenced on the basis of inaccurate information and is entitled to be resentenced.

■■ Inaccurate information standing alone does not require resentencing. Villa is entitled to procedures good enough to produce accurate decisions over the run of cases; the Constitution does not ensure perfect accuracy. Cf. *Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976). The Supreme Court has emphasized that sentencing judges may receive and use the widest selection of information, some of which, such as hearsay, poses risks of inaccuracy. See *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980); *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *United States v. Plisek*, 657 F.2d 920 (7th Cir.1981). The

Court has held that "misinformation of constitutional magnitude" may not be used in imposing sentence, *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972), but it has never held that all mistakes of fact are "misinformation of constitutional magnitude". The "misinformation" in *Tucker* was reliance on a prior uncounseled (and therefore unconstitutional) conviction. We have recently reserved the question whether *Tucker* applies to mistakes of fact that do not have independent constitutional significance, *Johnson v. United States*, 805 F.2d 1284, 1288–89 (7th Cir.1986), for if it did federal courts would be compelled to retry the veracity of every statement uttered in a sentencing proceeding—something they do not do even for the testimony at trial. The Constitution is satisfied if the defendant has an opportunity at trial to challenge testimony claimed to be false and to object to other evidence; the Constitution does not ensure that all proper objections will be sustained and that no witnesses will lie.

■ We need not decide whether *Tucker* requires a different approach to sentencing because, yet again, Villa did not make a timely objection. His counsel objected on appeal to the prosecutor's reference to "special facilities", to which the court replied (93 Ill.App.3d at 204, 48 Ill.Dec. at 710, 416 N.E.2d at 1232):

> In the present case, the trial court's determination of an appropriate sentence was based on its consideration of the heinous nature of the offenses in question, the effect of these acts on the victim and his family, and defendant's prior criminal background and the fact that he could not be rehabilitated. Defendant's contention that the Department of Corrections has no special facilities for quadriplegics is unsupported by the record and therefore we cannot give consideration to this on appeal.

Villa did not make a *Tucker* argument on appeal, which forfeits the point under *Murray v. Carrier* and *Smith v. Murray*. And he did not establish the basis for his point in the trial court. Counsel did not object to the prosecutor's representation, offer con-

trary evidence, or ask for a continuance to allow evidence to be gathered. It is too late now.

Villa's current lawyer argues that Villa's trial lawyer was taken unawares and could not have been expected to object. This has a hollow ring. Villa, after all, is the one who claimed that his condition is relevant to sentencing. Having obtained a hearing on the point, counsel was required to come prepared, or to ask for a continuance when his preparation ran out. Villa does not object to the procedures used to impose sentence. The sentencing procedures, like the trial, offered him a time and place to settle disputed questions of fact. After neglecting the opportunity Illinois afforded him, Villa may not move to the federal courts and litigate the question. He has not established "cause" for his failure to pursue the matter adequately in the state courts, and therefore he has not established entitlement to a writ of habeas corpus.

AFFIRMED

CUDAHY, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Villa's challenge to the length of his sentence is not mooted by his § 1983 settlement. I also agree that resentencing is not required in *every* habeas corpus case where a judge relied on inaccurate information. *But see United States ex rel Welch v. Lane*, 738 F.2d 863, 865 (7th Cir.1984) (sentence may be set aside when defendant shows court relied on inaccurate information in passing sentence). However, given the fragmentary record we have on appeal, I would remand to the district court for a determination whether waiver actually occurred in sentencing or on state appeal, and, if so, for a determination whether cause and prejudice can be shown to overcome the procedural default.

In light of the fragmentary transcript that we have on appeal, it is not clear to me that Villa waived any challenge at the sentencing hearing itself. Admittedly, it seems likely that he should at least have requested a continuance, but given the record before us, and the fact that the district court did not address this question

of waiver, we ought to remand. Similarly, it is not clear that Villa waived the claim on appeal in the state court. Villa apparently did challenge the sentence as improperly based on false information, but did not argue under *U.S. v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). The state court did not reach the merits of the issue, for somewhat obscure reasons (Villa's claim that no special facilities existed in prison was merely "unsupported by the record"). Again, the district court did not reach this waiver issue. The respondent, in answering the petition in the district court, apparently did not argue that waiver occurred on the state appeal. Thus, it is not obvious that Villa waived his constitutional challenge, nor is it obvious that the respondent can now claim a defense of waiver.

Even if waiver were found, either in the sentencing hearing or on state appeal, Villa should be given an opportunity to show cause and prejudice sufficient to overcome the procedural default. This issue also was not reached by the district court; we should remand for its determination. With respect to the question of cause, if, as Villa has asserted on appeal, the information about prison facilities was in the state's exclusive control and treated as confidential, it is arguable that Villa could show, as outlined in *Murray v. Carrier*, — U.S. ——, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986), that the facts were not reasonably available to counsel, or that there was some interference by the state with access to them. It seems difficult to deny these possibilities given the state of record on appeal. Regarding the issue of prejudice, we know the outlines of this standard when applied to errors at trial (the errors must have "worked to [the defendant's] actual and substantial disadvantage, infecting the entire trial," *Murray*, 106 S.Ct. at 2649), but it is not clear how this translates into prejudice in a sentencing hearing. Given the highly discretionary nature of sentencing, it is difficult to conclude that such an error caused no prejudice. In this case, where the sentencing judge explicitly relied on the false information in imposing the sentence, prejudice is possible if not likely.

The district court did not decide the question of waiver or of possible cause and prejudice. In light of the incomplete record on appeal and the factual questions implicated here, we should remand to the district court to determine these issues.