**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Terry Wayne TURNER,**
**Defendant–Appellant.**

**No. 87–3070.**

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1988.
Decided Jan. 5, 1989.

David E. Robinson, Jacksonville, Ill., for defendant-appellant.

J. William Roberts, U.S. Atty. Office, Springfield, Ill., for plaintiff-appellee.

Before WOOD, Jr., COFFEY, and EASTERBROOK, Circuit Judges.

PER CURIAM.

The sentencing of defendant Terry Wayne Turner is the only issue.

I

Turner was charged in a three-count indictment with conspiracy to receive, possess, and pass counterfeit federal reserve notes, in violation of 18 U.S.C. § 371 (Count I); knowingly receiving counterfeit federal reserve notes, in violation of 18 U.S.C. § 473 (Count II); and knowing possession and concealment of counterfeit federal reserve notes with the intent to defraud, in violation of 18 U.S.C. § 472 (Count III). Pursuant to a plea agreement, Turner pleaded guilty to Counts I and III, and Count II was dismissed. The defendant was sentenced on December 7, 1987, to a term of five years' imprisonment on Count III. On Count I, Turner received a five-year term of probation consecutive to the sentence imposed on Count III.

These charges stemmed from a conspiracy to distribute counterfeit federal reserve notes. A co-conspirator printed approximately $250,000 worth of counterfeit money. Other co-conspirators, one of whom was Flynt Talkington, purchased the lot from the printer for $3,000 and circulated the notes around the country. Turner, for $300 in legal tender, purchased from Talkington counterfeit notes with a face value of $3,000. Subsequently, with two additional co-conspirators, Turner passed counterfeit notes with a face value of about $300 in Kentucky and Ohio. The defendant and his friends destroyed the balance of the counterfeit purchase.

On October 10, 1986, an Assistant United States Attorney apparently offered the defendant informal transactional immunity: if he would cooperate, he would not be indicted. The record does not indicate that a court order authorizing the grant of immunity had been sought or entered. In spite of the government's offer, when called before the grand jury on two subsequent occasions, Turner relied on his fifth amendment privilege against self-incrimination and refused to testify. The parties do not dispute that these first two grand jury appearances by the defendant were unproductive for the government. On December 2, 1986, the government withdrew its offer. Turner was indicted on June 22, 1987.

The defendant then entered into a written plea agreement with the government. This agreement provided for the defendant's pleas of guilty to Counts I and III, as amended; the dismissal of Count II; the dismissal of a separate indictment involving drug offenses; the defendant's cooperation with the government in any related investigation; and the defendant's truthful testimony before any federal grand jury or in any district court proceeding. The government agreed to make known to the sentencing court the extent of Turner's cooperation, but the government was free to make any sentencing recommendation it deemed appropriate.

Following the plea agreement, Turner appeared before the grand jury a third time. This appearance is to be distinguished from the two prior times when he refused to testify under the offer of informal immunity. There is little in the record to show what actually happened before the grand jury on this last appearance, except the government's characterization of it. Those grand jury proceedings were not made a part of this record, sealed or unsealed.

Two sentencing problems arise from the defendant's three grand jury appearances. The first problem requires us to assess Turner's actions in refusing to testify under the informal immunity offer, and the effect on his sentencing; the second requires us to determine whether Turner lived up to his plea agreement. To resolve these problems, we must closely examine the record.

Turner testified at his sentencing hearing. During cross-examination of the defendant by an Assistant United States Attorney, the following exchange took place concerning the defendant's first two grand jury appearances, at which he had refused to testify:

Q. And at that time when you were given immunity and asked to appear before the Grand Jury, you refused to testify, didn't you?

A. Yes.

Q. You refused to assist the Government in this investigation, isn't that right?

A. Yes.

Q. Now, I think you testified on direct examination that you felt remorseful and sorry that you got involved with the counterfeit money.
Isn't that right?

A. Yes.

Q. But you decided not to help the Government in the investigation, isn't that right?

A. I—I did—well, I took—went to the Grand Jury after that and told you—

Q. Mr. Turner, in October when you were given the immunity agreement, you refused to go into the Grand Jury and testify.
Do you recall that?

A. *Yeah, I recall, but I recall that I didn't get it signed by a judge neither like everybody else did.*

Q. *Well, were you willing to cooperate at that time with the Government in the investigation?*

A. *If it would have been signed by a judge.*
*I mean, everybody else at that time had theirs signed by a judge, and I didn't. So—*

(Emphasis added.) Thus, Turner explained, his refusal to testify at his first and second grand jury appearances was based on the absence of a court order authorizing the government's grant of immunity.

Shortly after this exchange, additional cross-examination took place concerning the subsequent grand jury testimony in accordance with the plea agreement:

Q. You refused to assist the Government in uncovering this criminal venture that you say you're remorseful for, isn't that right?

A. Yes.

Q. In fact, the first time that you offered any assistance whatsoever to the Government is after you had pled guilty to the offense, isn't that correct?

A. Yes.

Q. Prior to that time you had not identified where you obtained the counterfeit money from, had you?

A. Pardon?

Q. Prior to pleading guilty, you had not told the Government where you got the counterfeit money from, isn't that right?

A. Yes.

Q. Prior to pleading guilty, you didn't tell the Government how much money you had obtained from Flynt Talkington, did you?

A. Yes—or I—

Q. Had you talked with the Government at all about counterfeit money prior to pleading guilty?

A. No, I don't guess.

Later, during the same cross-examination, this further exchange occurred:

Q. Did you appear before the Grand Jury last week?

A. Yes.

Q. And did you answer whatever questions were asked of you?

A. Yes.

So Turner was of opinion that he answered whatever questions he was asked after his plea. The prosecutor put in no contrary evidence, but he was to take a different view anyway. During arguments, the Assistant United States Attorney said (emphasis added):

I would also point out to the Court that in this case we have another serious factor which I would ask the Court to consider, and that is the Defendant's lack of cooperation. He appears to be remorseful today. He claims that he is trying to clean up his act, undergo drug treatment, that he is sorry for the of-

fenses that he committed, but I would point out to the Court that when he could have made a difference in this investigation of counterfeiting activity, *when he was given the opportunity without any consequence to himself to assist the Government in its investigation, he refused to do so, not on one occasion, but on two occasions,* and it's only now when the Defendant is facing a maximum penalty of twenty years that he exhibits his remorsefulness.

*The Defendant testified before a Federal Grand Jury on this pass* [sic] *Friday.* I examined him in the Grand Jury. My characterization of his testimony would be useless. He provided the Government with very little information which we could proceed upon. His testimony was of no value to the Government. *True, he has appeared. He did testify, but I would recall to the Court that the Defendant also appeared earlier before the Grand Jury and refused to testify.*

I would characterize his whole attitude toward the Government as being recalcitrant, stubborn and uncooperative. The Defendant has not only directed this attitude toward the United States Attorney's office, but has also directed this attitude toward the arm of the Court, the probation office.

The first part of this argument shows the emphasis placed by the government on Turner's refusal to cooperate under the offer of informal immunity. The second part of the government's argument indicates that Turner, in keeping with his plea agreement, appeared before the grand jury and testified, but not to the prosecutor's satisfaction. The government does not claim that Turner's testimony was false or misleading, that the defendant refused to answer, or that the defendant held back information.

When it came time for defense counsel to argue in mitigation, he touched upon Turner's lack of cooperation in his first two grand jury appearances.

I realize that with regard to Government cooperation that Mr. Turner was called before the Grand Jury and received a letter from the US Attorney's office offering him immunity even though the matter was never submitted to the Court or any order obtained on that. He did have the letter offer from the US Attorney. He availed himself of his right against self-incrimination, has indicated that he would have testified if he had been ordered pursuant to a grant of immunity.

After the court heard the evidence and the arguments, the district judge explained the basis for the sentence he was imposing. The judge made quite clear what disturbed him:

I just reread here a few moments ago in your file the plea agreement that you entered into with the Government. And you agreed to cooperate with the Government, to help and assist in investigations, including truthful testimony before any Federal Grand Jury and United States District Court proceeding, and in exchange for that the Government was going to do a whole lot of things, dismissing counts, not prosecute Randy Rex Turner and make known to me how much your cooperation involved today at the time of sentencing right now.

*You reneged on your bargain.* That's a signed contract and the day I took your plea, I turned to the last page of it, and I had you look at it, come up here and I asked you, is that your signature, and you said yes, it was. *You didn't live up to your bargain. You didn't cooperate, and you didn't testify the first two times before that Federal Grand Jury.* So, your immunity was withdrawn, and, you know, all of this kind of goes back full circle to the two times when the Court in Morgan County had to issue bench warrants to get you in, to get you in before that Court.

Well, I can certainly say this to you, Mr. Turner. In my twenty-one years as a Judge, I recall very, very few cases of the Defendant who has committed as many aggravating acts prior to his sentencing in the offense that he's in Court for. I've had plenty with [records] as long as your arm before that offense.

I'm not talking about that. *I'm talking about the involvement here and your lack of cooperation, your lack of living up to your agreement with the Government and the plea agreement* that you asked me to accept here in Court, and I did.

Well, we simply can't tolerate this, and here Mr. Robinson argues very eloquently concerning rehabilitation and acknowledgement of errors, et cetera, but it comes so late and so little.

(Emphasis added.) Sentence was then imposed without further clarification from the Assistant United States Attorney or defense counsel.

## II

The district court apparently based the sentence on two considerations in addition to the nature of the crime and Turner's personal history: the refusal to cooperate under the "informal immunity" and the limited utility of the testimony Turner finally gave before the grand jury. Turner contends that both of these are forbidden considerations, so that we must vacate the sentence.

Let us start with the first. If the district court believed that Turner was under a legal obligation to testify in response to the proffered "informal immunity", he was under a misapprehension that would require resentencing. See *United States v. Kerley*, 838 F.2d 932, 940–41 (7th Cir.), modified on other grounds, 838 F.2d 941 (1988). Only a formal grant of immunity under 18 U.S.C. § 6003 strips a suspect of his privilege (by eliminating the possibility of incrimination) and requires testimony. *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983); *United States v. Doe*, 465 U.S. 605, 616, 104 S.Ct. 1237, 1244, 79 L.Ed.2d 552 (1984). Turner was not under such compulsion and was entitled to deem the threat of prosecution real until the United States took the steps legally required to dissipate it. So when Turner balked before the grand jury the first two times he was called, he was asserting a valid privilege against self-incrimination.

We do not construe the district judge's remarks as expressing the view that Turner lacked a privilege to do what he did. We read them, rather, as expressing concern about Turner's decision not to cooperate voluntarily. Though he had the privilege, he did not need to assert it. The prosecutor's failure to obtain a grant of immunity meant that Turner could not be compelled to testify; it does not mean that Turner could not be invited to testify, and then rewarded (by a lower sentence) for his cooperation. We held in *United States v. Murphy*, 768 F.2d 1518, 1532 (7th Cir.1985), that informal offers of immunity are simply invitations to waive the privilege on terms the witness finds sufficient, and as invitations are not problematic. Giving testimony under a grant of immunity is not "cooperation" of any kind; it is knuckling under to a threat of force. Talking when there is no such compulsion is genuine cooperation.

*Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), holds that cooperation may be rewarded with a lower sentence, implying that noncooperators lawfully may receive a higher sentence than cooperators. A sentencing differential is implicit in every plea bargain and explicit in most; differentials—whether called "rewards" for cooperation or "penalties" for truculence—are common. If the defendant waives a constitutional right (that is, relinquishes it without compulsion), he may receive a sentencing discount. If he stands on his rights, he gets a higher sentence. E.g., *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The record in this case does not suggest any kind of disposition other than the usual offer of lenience for waiver—and the standard sentencing differential if there is no cooperation. So although *Roberts* does not explicitly address a sentencing discount for waiving the privilege, its principle—that cooperation may be taken into account—is applicable. If it were not, we would have to hold plea bargains unconstitutional. *Roberts* sustained a higher sentence on account of a defendant's refusal to name his confederates; our case involves a higher sentence on account of

refusal to testify at all (testimony that presumably would have entailed, among other things, identifying confederates); there is no difference in principle, since in either case the accused had a constitutional privilege to keep silent to the extent the requested information would have brought his own crimes to light.

The sentencing differential is problematic only if the district judge gives the defendant a higher sentence than the one he would have received had the prosecutor never invited the waiver of the constitutional rights. See *United States v. Long*, 823 F.2d 1209, 1211–12 (7th Cir.1987). Some of the district judge's language suggests a penalty relative to the sentence that would have been appropriate had the prosecutor not offered a deal in the first place— though the sentence, five years for a counterfeiting offense, is not unusually long. Turner might have requested a remand so that the district judge could explain more adequately how he was taking noncooperation into account in devising a sentence. Yet Turner has not asked for this relief, probably because he is not entitled to it in light of the terms of the initial bargain with the government.

The district judge recognized that Turner had not "merely" refused to testify; he had promised to testify and then balked. Reneging on one's promise is a basis of punishment independent of the assertion of the privilege, a basis on which the sentence legitimately may be augmented relative to the sentence that would have been imposed had the prosecutor never initiated discussions. Turner does not seriously deny that he reneged; he contends only that he had a reason to do so. Yet the reason is not satisfactory. He promised to *cooperate;* refusing to talk because the prosecutor has not obtained an order compelling testimony is refusal to cooperate. All cooperation means is testifying when there is no legal obligation to do so. So Turner did break his promise. That, coupled with the lack of a request for a remand to determine the appropriate benchmark sentence, leads us to conclude that there is no need for a remand on this score. See also *United States v. Kovic*, 830 F.2d 680, 689–91 (7th Cir.1987), and *United States v. Zabic*, 745 F.2d 464, 475–76 (7th Cir.1984), both concluding that a district court does not err by denying to uncooperative defendants a sentencing credit they could have received if they had cooperated. Under *Roberts*, district courts properly may give defendants an incentive to be forthcoming. 445 U.S. at 557–58, 100 S.Ct. at 1362–63.

The district court also may have acted on the prosecutor's representation that Turner had not supplied useful information to the prosecution even after pleading guilty. The prosecutor called the testimony "useless", said that Turner provided "very little" information and that his "whole attitude ... [was] recalcitrant, stubborn and uncooperative", and so on. Turner contends that this led to the imposition of sentence on the basis of inaccurate information, but we do not see how. The prosecutor is entitled to his opinion; the view may not be well-advised, but that is a different problem. Perhaps Turner told the grand jury everything he knew, and the prosecutor was simply annoyed to learn that he had caught a small fish. But we do not know this. Turner did not present the district court, or us, with the transcript of the grand jury appearance, so we cannot assess the accuracy of the prosecutor's appraisal; it was Turner's responsibility, as appellant, to provide this court with the basis of a decision in his favor. (We do not know whether Turner has a transcript of his testimony; at all events he does not contend that he wants this transcript but has been unable to obtain it.) Moreover, Turner did not dispute the prosecutor's characterization in the district court, which was his appropriate forum. Having bypassed the opportunity to challenge the government's view, Turner is in no position to ask us to *assume* that the judge and prosecutor are wrong, and then to argue that the sentence should be vacated on the basis of the assumption. Turner did not point out, either to the district court or to us, how his testimony was either forthcoming or useful. Perhaps Turner could have made a record, but he didn't. E.g., *United States v. Warner*, 855 F.2d 372, 374 (7th

Cir.1988) (citing cases); *United States v. Carter,* 720 F.2d 941, 945 (7th Cir.1983).*

Too, we doubt that disagreements of this sort concern "inaccurate" information. We do not have a dispute about the facts; we have a dispute about the right way to characterize the facts ("recalcitrant" and the like). We are not aware of any case that even suggests that an appellate court may set aside a sentence because of a judge's characterization (or mischaracterization) of undisputed facts. If the judges of this panel had considered the facts of this case, any one of us might have characterized them differently, but these differences are distinct from inaccurate information. The seminal case in the area, *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), talks about setting aside a sentence imposed on the basis of "misinformation of constitutional magnitude"—by which it meant reliance on an invalid conviction. Turner's situation looks neither like the use of "misinformation" (as opposed to disputed characterizations of agreed-on information) nor like a problem of "constitutional magnitude". The Supreme Court has never vacated a sentence (other than a capital sentence) because of reliance on mistaken beliefs about the facts, unless there was an independent constitutional reason why this kind of fact was a sort that could not be relied upon. As we observed in *United States ex rel. Villa v. Fairman,* 810 F.2d 715, 718–19 (7th Cir. 1987) (citations omitted):

Inaccurate information standing alone does not require resentencing. [A defendant] is entitled to procedures good enough to produce accurate decisions over the run of cases; the Constitution does not ensure perfect accuracy. The Supreme Court has emphasized that sentencing judges may receive and use the widest selection of information, some of which, such as hearsay, poses risks of inaccuracy. The Court has held that "misinformation of constitutional magnitude" may not be used in imposing sentence, but it has never held that all mistakes of fact are "misinformation of constitutional magnitude."

To say that the Constitution precludes the use of *any* inaccurate information in sentencing is to require appellate courts to retry all presentations during sentencing, something they are not suited to do and do not do with respect to the evidence received at the trial on the merits. Why would the veracity of testimony during the trial be left to the trier of fact, while appellate courts play a greater role supervising sentencing? "The Constitution is satisfied if the defendant has an opportunity at trial to challenge testimony claimed to be false and to object to other evidence; the Constitution does not ensure that all proper objections will be sustained and that no witnesses will lie." *Villa,* 810 F.2d at 719. Evidence and argument are more freely admissible at sentencing than at trial; this implies a lesser, not a greater, role for appellate review of the accuracy of claims made. Moreover, as the Court has "repeatedly stated, 'the Constitution entitles a criminal defendant to a fair trial, not a perfect one.'" *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986), quoting from *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

If Turner and his lawyer thought that the prosecutor mischaracterized his degree of cooperation or the utility of the information he supplied, they could—and should—have said so. The prosecutor spoke first; Turner's lawyer spoke at greater length than the prosecutor yet did not dispute his

---

* *United States v. Harris,* 558 F.2d 366 (7th Cir. 1977), does not stand for the contrary proposition. The court said, *id.* at 375 (citations omitted): "As a general rule, we would agree that sentence relief should be foreclosed where a defendant, who is not denied access to the presentence report, 'has not directly and specifically denied the truth of hearsay information' and the only denial of record is that of counsel on appeal." We excused the absence of an objection in *Harris* because counsel incompetently had neglected to read the presentence report, which contained internal inconsistencies and some very serious, unanswered factual allegations. Our case does not involve inept counsel or unawareness of the government's position (which was stated in open court), and as we discuss in the following text does not involve a dispute about "facts".

characterization beyond remarking that Turner would have testified sooner had he been given formal immunity; Turner, offered the right of allocation, expressed only remorse for his deeds. "[Turner] and his counsel had ample opportunity at the sentencing hearing to voice any objections or corrections to any information ... mentioned by the judge, but neither did although both addressed the court." *United States v. Gomez,* 797 F.2d 417, 421 (7th Cir.1986). The judge then accepted the prosecutor's view. This is a usual consequence of failure to contest an adversary's characterization. Turner and his lawyer did not inform the district judge that they disagreed with his understanding of affairs. Disagreement was expressed in this court for the first time. The process leading to the imposition of sentence therefore was adequate under the Constitution and other prevailing rules. The sentence was well within the statutory limits, and it is therefore not subject to review. E.g., *United States v. Plain,* 856 F.2d 913 (7th Cir.1988); *United States v. Nesbitt,* 852 F.2d 1502, 1521–22 (7th Cir.1988); *United States v. Bush,* 820 F.2d 858, 862 (7th Cir.1987).

Turner's appellate counsel has made a presentation significantly more complete, and therefore more persuasive, than the one offered to the sentencing judge. Fed. R.Crim.P. 35(b), as it applies to crimes committed before November 1, 1987, gives Turner one last chance to approach the district judge upon the filing of the proper motion. We are confident that Judge Mills will receive this presentation with an open mind and alter Turner's sentence if he should be persuaded that the one-sided arguments he heard at sentencing led to an inappropriate disposition.

AFFIRMED.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

Because I believe the district court relied upon both improper and materially inaccurate information in sentencing the defendant, I must respectfully dissent. I would vacate the present sentence and remand to the district court for a fresh sentencing.

Turner claims that he is entitled to a resentencing because, in imposing sentence, the district judge relied primarily upon 1) evidence of Turner's refusal to testify before the first two grand juries without a formal grant of immunity, and 2) the judge's mistaken impression that Turner reneged on his plea agreement with the government when he appeared before the third grand jury.

The record reveals that those two situations formed the core of the judge's sentencing decision. Could the sentencing judge properly rely upon such considerations when imposing sentence? In my opinion, reliance upon either ground constitutes a violation of Turner's due process rights sufficient to dictate a resentencing. In any event it constitutes error reversible on direct appeal.

It is well recognized that sentencing judges have broad discretion concerning what information they may look to in sentencing. *See, e.g., United States v. Harris,* 558 F.2d 366, 372 (7th Cir.1977). That information need not be the sort that would be admissible at trial. *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (*cited in Harris,* 558 F.2d at 372). This is not to say, however, that there are no outside bounds. The Supreme Court has declared that defendants have a due process right not to be sentenced on the basis of either improper or inaccurate information. *Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (due process violation to be sentenced on basis of improper information); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (due process violation to be sentenced on basis of materially inaccurate information). *See also North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *United States v. Kerley,* 838 F.2d 932 (7th Cir. 1988); *United States ex rel. Welch v. Lane,* 738 F.2d 863 (7th Cir.1984); *United States v. Hubbard,* 618 F.2d 422 (7th Cir. 1979) (per curiam).

The majority holds that the test for determining whether a sentence must be vacated as violative of due process is whether it was based upon "misinformation of constitutional magnitude"; yet they choose a reading of this phrase which I view as narrower than either Supreme Court or our own precedent dictates. True enough, a judge's reliance upon "misinformation of constitutional magnitude" will result in a vacated sentence. *See Tucker,* 404 U.S. at 447–49, 92 S.Ct. at 591–93 (coining the phrase "misinformation of constitutional magnitude"); *cf. Pearce,* 395 U.S. at 724–26, 89 S.Ct. at 2080–81 (sentence vacated where judge's imposition of enhanced sentence on reconviction was based upon defendant's appeal of first conviction). However, the majority's interpretation ignores a number of cases which show that this concept encompasses both improper considerations and inaccurate information.

The phrase "misinformation of constitutional magnitude," as used by the Court in *Tucker,* connoted *improper* information. The defendant's sentence in *Tucker* was vacated because the sentencing judge had enhanced the defendant's sentence in reliance upon his prior record of three convictions, at least two of which were later found to be constitutionally invalid. *Id.* at 447–49, 92 S.Ct. at 591–93. It was not suggested that the information concerning the convictions was materially false or inaccurate as to the *fact* of conviction or defendant's actual guilt. The Court simply found it improper to enhance a defendant's current sentence based upon a record of such convictions.

Yet, the Court also recognizes material inaccuracy or falsity as a basis for vacating a sentence. *See Townsend v. Burke,* 334 U.S. at 740–41, 68 S.Ct. at 1255. In *Townsend,* the sentencing judge had either been supplied an inaccurate record of the defendant's prior convictions, or had misread

the record, or both, when imposing sentence. The Court held that reliance upon materially inaccurate information in sentencing violates a defendant's due process rights.[1] *Id.* at 740–41, 68 S.Ct. at 1255.

When pronouncing sentence in the present case, Judge Mills clearly articulated the bases for the sentence imposed:

I just reread here a few moments ago in your file the plea agreement that you entered into with the Government. And you agreed to cooperate with the Government, to help and assist in investigations, including truthful testimony before any Federal Grand Jury and United States District Court proceeding, and in exchange for that the Government was going to do a whole lot of things, dismissing counts, not prosecute Randy Rex Turner and make known to me how much your cooperation involved today at the time of sentencing right now.

*You reneged on your bargain.* That's a signed contract and the day I took your plea, I turned to the last page of it, and I had you look at it, come up here and I asked you, is that your signature, and you said yes, it was. *You didn't live up to your bargain. You didn't cooperate, and you didn't testify the first two times before that Federal Grand Jury.* So, your immunity was withdrawn, and, you know, all of this kind of goes back full circle to the two times when the Court in Morgan County had to issue bench warrants to get you in, to get you in before that Court. (Emphasis added).

Again Judge Mills commented:

Well, I can certainly say this to you Mr. Turner. In my twenty-one years as a Judge, I recall very, very few cases of the Defendant who has committed as many aggravating acts prior to his sentencing in the offense that he's in Court

---

**1.** The Court in *Townsend* also found the defendant's lack of representation at the sentencing hearing to be significant. However, lack of counsel does not seem to be the determinative factor in these cases. This court has never so held in any event. *See, e.g., United States ex rel. Welch v. Lane,* 738 F.2d 863 (7th Cir.1984) (sentence vacated because based on inaccurate in-

formation even though defendant represented at sentencing hearing); *United States v. Harris,* 558 F.2d 366 (7th Cir.1977) (same). In other words, if a trial judge relies upon inaccurate or improper information in imposing sentence, the presence of counsel will not cure or excuse the due process violation.

for. I've had plenty with [records] as long as your arm before that offense. I'm not talking about that. *I'm talking about the involvement here and your lack of cooperation, your lack of living up to your agreement with the Government and the plea agreement* that you asked me to accept here in Court, and I did.

Well, we simply can't tolerate this, and here Mr. Robinson argues very eloquently concerning rehabilitation and acknowledgement of errors, et cetera, but it comes so late and so little.

(Emphasis added).

These excerpts make it clear that Judge Mills relied in sentencing upon *both* improper information (Turner's refusal to give up his fifth amendment privilege against self-incrimination before the first two grand juries), and inaccurate information (the judge's mistaken impression that Turner reneged on his plea agreement with the government when he appeared before the third grand jury).

In order to understand how improper Judge Mills' reliance upon Turner's refusal to testify before the first two grand juries was, it is necessary to understand that Turner was validly asserting his fifth amendment privilege. The government offered use immunity to the defendant in a letter signed by an Assistant United States Attorney on October 10, 1986.[2] The letter represents that the Assistant United States Attorney has the authority to grant immunity. The source of this claimed authority, whether high officials in the Department of Justice or the United States Attorney, was not set forth. The letter mentions that there had been preliminary discussions between the government and the defendant, but the record does not reveal the content of those discussions. The Assistant United States Attorney's letter further undertakes to assure the defendant that he is being

accorded use immunity as provided in Title 18 of the United States Code. The particular section of the statute is not specified in the letter.

Title 18 unequivocally sets forth the proper procedure for granting statutory immunity. *See* 18 U.S.C. §§ 6001–6005. To grant immunity, the United State Attorney must receive the approval of appropriate top officials of the Department of Justice by demonstrating to them that the grant of immunity is in the public interest. *Id.* § 6003(b). The statute also requires that the district court approve the grant of immunity. *Id.* § 6003(a).

The present record is devoid of any suggestion that the government followed this statutory procedure. As noted by the majority, an informal immunity offer based on an alleged but unspecified conversation with the defendant does not compel a defendant to waive his fifth amendment rights. Only a grant of statutory immunity can accomplish that. *United States v. Murphy*, 768 F.2d 1518, 1532 (7th Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986). The defendant, therefore, was under no obligation to cooperate with the government.

This does not, however, imply that the defendant did not wish to cooperate with the government. As set forth in the majority opinion, the defendant testified at the sentencing hearing that he would have cooperated with the government and testified at the first two grand juries if he had seen, as other co-conspirators had, a court order authorizing the grant of immunity. While I do not intend to challenge the validity of the common use of informal immunity generally, I note that Turner had some reason to hesitate over the government's failure to obtain a court order authorizing the immunity offered him. The effectiveness of the government's informal immunity offer in protecting him from the subsequent use of

---

2. The informal immunity letter, in its entirety, stated:

Pursuant to the authority vested in me, and pursuant to our discussions, please be advised that you are accorded use immunity as provided for in Title 18, United States Code. This use immunity is contingent upon your being

completely truthful in your answers to requests directed to you by government agents and personnel both before the Grand Jury and outside the Grand Jury. It is further contingent upon your extending complete cooperation to the United States.

his testimony, particularly in courts outside the Central District of Illinois, could be viewed by him as uncertain. *See United States v. D'Apice*, 664 F.2d 75, 78 (5th Cir.1981); *United States v. Sanderson*, 498 F.Supp. 273, 276 (M.D.Fla.1980). The cases on this subject are ordinarily concerned with whether and to what extent the government itself is bound by its informal offer of immunity, particularly after a witness has testified in reliance on the immunity. *See, e.g., United States v. Williams*, 809 F.2d 1072, 1081–82 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 228, 229, 259, 506, 98 L.Ed.2d 187 (1987) (four petitions for certiorari denied). In any event the government did not extend to Turner the statutory immunity that it represented.

This state of affairs must be seen as a critical factor in evaluating the genuineness of Turner's reliance upon his fifth amendment privilege in refusing to testify under the informal immunity offer. The defendant and his co-conspirators had crossed through several states in committing the acts to which he later pled guilty. It appears that Turner's refusal to cooperate under the informal immunity offer reflected a reasonable assertion of his fifth amendment privilege.

The majority characterizes the defendant's refusal to testify before the first two grand juries as "noncooperation," justifying enhancement of his sentence under *United States v. Roberts*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980). Noncooperation it may be, but it is still protected behavior under the fifth amendment, and *Roberts* in no way supports the proposition that a criminal defendant's sentence may be enhanced for failure to cooperate with the authorities when that noncooperation is founded upon the fifth amendment.

The Court in *Roberts* did hold that the sentencing judge properly relied upon the defendant's lack of cooperation in enhancing his sentence, 445 U.S. at 557–58, 100 S.Ct. at 1362–63, but as I see it, not for the reason which the majority today supposes. *Roberts* involved a criminal defendant who refused to cooperate with authorities after he had made a full confession of his own criminal activities. The defendant was asked to provide the prosecution not with information which might incriminate him (which was not at issue since he had already confessed), but with information that could lead to the arrest and prosecution of others. Only upon appeal, nearly three years after the prosecution requested the defendant's help, did the defendant in *Roberts* assert that the basis for his noncooperation was the invocation of his fifth amendment privilege against self-incrimination.

The Court reasoned that the defendant's failure to raise the issue of self-incrimination over a prolonged period of time, in a scenario that did not suggest to the prosecution or the sentencing judge that the defendant was concerned with incriminating himself, gave rise to a reasonable inference that the defendant's lack of cooperation was not based on a legitimate exercise of his fifth amendment privilege but upon some other, unprotected motive.

> The Fifth Amendment privilege against compelled self-incrimination is not self-executing. At least where the Government has no substantial reason to believe that the requested disclosures are likely to be incriminating, the privilege may not be relied upon unless it is invoked in a timely fashion.

*Roberts*, 445 U.S. at 559–60, 100 S.Ct. at 1363–64 (citations omitted).

The Court thus rejected the defendant's objection to his enhanced sentence in *Roberts*, not because assertion of the fifth amendment privilege may be burdened with the threat of increased punishment for its exercise, but because the defendant in *Roberts* did not in fact rely upon the privilege when he refused to cooperate. In fact, the Court stated that although Roberts' invocation of the fifth amendment was too late to be credible, "[t]hese arguments would have merited serious consideration if they had been presented properly to the sentencing judge." *Id.* at 559, 100 S.Ct. at 1363. All that *Roberts* truly stands for, therefore, is the proposition that a defendant's refusal to cooperate with an investigation may be held against him at the sentencing stage if his silence is

*not* founded upon the fifth amendment privilege. Where a defendant's silence *is* based on the fifth amendment privilege against self-incrimination, a judge cannot rely upon the defendant's noncooperation in making a sentencing decision. *United States v. Garcia,* 544 F.2d 681, 685 & n. 5 (3d Cir.1976); *see also United States v. Lemon,* 723 F.2d 922, 937 (D.C.Cir.1983).

There is no serious question that Turner was asserting a valid fifth amendment privilege when he refused to testify before the first two grand juries; the majority concedes this point.[3] Turner was asked to testify before he was indicted or had admitted any involvement in criminal activity. In contrast to the defendant's lack of cooperation in *Roberts,* Turner's refusal to testify before the first two grand juries was clearly motivated by a desire to avoid self-incrimination. Nothing in *Roberts* sanctions Judge Mills' decision to enhance Turner's sentence on the basis of this valid and appropriate exercise of his fifth amendment privilege.

The majority cites *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed. 2d 604 (1978), for the proposition that a criminal defendant can be given a stiffer sentence for standing on, rather than relinquishing, his constitutional rights. *Bordenkircher* addressed the question of whether a prosecutor could constitutionally coax a criminal defendant to plead guilty to a charge he had already been indicted on by threatening to pursue a more serious charge if the defendant refused. The defendant in *Bordenkircher* refused to plead guilty to a relatively minor current charge, was indicted on a far more serious charge, was convicted and received a life sentence. Significantly, the sentencing differential in *Bordenkircher* did not arise out of the exercise of judicial discretion—the offense of which the defendant was convicted carried a mandatory life sentence. *Id.* at 358–59, 98 S.Ct. at 665–66.

A closely divided Court (5–4) ruled that such a practice was constitutionally acceptable where the prosecution could in fact have indicted the defendant on the more serious charge to begin with, and the defendant in fact knew from the beginning of the plea negotiations that the prosecution would seek a conviction on the greater charge if the defendant refused to plead guilty to the lesser charge. The Court was careful to limit its decision to the facts and circumstances of that specific case:

> We hold only that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment.

*Bordenkircher,* 434 U.S. at 365, 98 S.Ct. at 669.

Nowhere in the *Bordenkircher* opinion did the Court address the issue of whether, once the defendant is convicted, a sentencing judge may enhance a defendant's sentence as punishment for refusing to relinquish constitutional rights. *Bordenkircher* at most sanctions the practice of leveraging by prosecutors during plea negotiations; it does not endorse the practice of sentence enhancement by judges based upon defendants' refusal to waive constitutional rights.

In fact, such practices have been strongly condemned by the Supreme Court. In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Court held that it constitutes a violation of due process for a sentencing judge to enhance a criminal defendant's sentence on the grounds that the defendant had exercised his right of appeal. In a pair of consolidated cases the Court reviewed the practice by sentencing judges of imposing greater sen-

---

**3.** Specifically, the majority states:

> Only a formal grant of immunity ... strips a suspect of his privilege (by eliminating the possibility of incrimination) and requires testimony.... Turner was not under such compulsion and was entitled to deem the threat of

prosecution real until the United States took the steps legally required to dissipate it. So when Turner balked before the grand jury the first two times he was called, he was asserting a valid privilege against self-incrimination.

Maj. op. at 1398 (citations omitted).

tences on criminal defendants upon reconviction after a successful appeal of an earlier conviction. The Court held that penalizing the exercise of the right to appeal by imposing an enhanced sentence was constitutionally flawed:

> Due process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

*Pearce,* 395 U.S. at 725, 89 S.Ct. at 2080.

If it is improper for a sentencing judge to burden, through sentence enhancement, a defendant's right to appeal, how can it be appropriate for a judge to similarly encumber the most basic of constitutional guarantees: the privilege not to incriminate oneself? The answer is quite simple—it is not appropriate.

> To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort ... and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional."

*Bordenkircher,* 434 U.S. at 357, 98 S.Ct. at 665 (*citing Pearce,* 395 U.S. at 738, 89 S.Ct. at 2082; *Chaffin v. Stynchcombe,* 412 U.S. 17, 32–33 & n. 20, 93 S.Ct. 1977, 1985–86 & n. 20, 36 L.Ed.2d 714 (1973)).

The majority's characterization of the defendant's exercise of his fifth amendment privilege as noncooperation does not alter this analysis. A sentence based upon a defendant's legitimate assertion of constitutionally guaranteed rights is no less founded upon "misinformation of constitutional magnitude" than reliance upon a record of constitutionally invalid convictions, *Tucker,* or upon the successful exercise of the right of appeal, *Pearce. See*

*also United States v. Carter,* 804 F.2d 508 (9th Cir.1986) (judge cannot enhance sentence based upon defendant's decision not to plead guilty but rather to put prosecution to its proof); *United States v. Hutchings,* 757 F.2d 11 (2d Cir.), *cert. denied,* 472 U.S. 1031, 105 S.Ct. 3511, 87 L.Ed.2d 640 (1985) (same). In such situations the defendant is not entitled to sentence consideration (as Turner might have been had he cooperated), but neither can his sentence be enhanced. The majority's point is well taken—such a distinction may be difficult to make at times, but difficulty in applying the law has never been an adequate excuse for failing to try. In this particular case the decision is less difficult, for the circumstances strongly support the conclusion that enhancement occurred.

The second inappropriate factor relied upon by the sentencing judge in this case was his mistaken impression that the defendant also had not fulfilled the terms of his plea agreement when he appeared before the grand jury the third time. In oral argument at the sentencing hearing the Assistant United States Attorney argued:

> *The defendant testified before a Federal Grand Jury on this pass* [sic] *Friday.* I examined him in the Grand Jury. My characterization of his testimony would be useless. He provided the Government with very little information which we could proceed upon. His testimony was of no value to the Government. *True, he has appeared. He did testify, but I would recall to the Court that the Defendant also appeared earlier before the Grand Jury and refused to testify.*

(Emphasis added).

This argument indicates that the defendant, in keeping with his plea agreement, actually did appear before the grand jury and testify. The government, however, was dissatisfied for some reason with what it learned from the defendant's testimony. The government does not claim that the defendant's testimony was false, that the defendant refused to answer, that the defendant misled the government in what information he did provide, or that the de-

fendant held back information. The government merely asserted that the defendant's testimony was "useless," that the defendant provided "very little information," and that his testimony was of "no value" to the government.

The district judge's comments in the sentencing record make it clear, however, that he misunderstood the government's comments to indicate that the defendant had failed to live up to the terms of the plea bargain. The government concedes that the district judge was under the impression that the defendant had violated the terms of the plea bargain. The record, to the contrary, suggests that the defendant did not violate the agreement. Some of the information he gave is revealed by the Assistant United States Attorney's cross-examination of the defendant. That the government was disappointed not to have netted a counterfeiting kingpin cannot be blamed on the defendant, who defense counsel seems correctly to have labelled as a "small cog" in the conspiracy. And even more certainly, the defendant's sentence cannot be based upon a mistaken apprehension by the judge that Turner did not live up to the plea agreement.

In *United States ex rel. Welch v. Lane,* 738 F.2d 863, 864–65 (7th Cir.1984), we noted:

> The Supreme Court has held that convicted defendants have a due process right to be sentenced on the basis of accurate information. *United States v. Tucker,* 404 U.S. 443, 447 [92 S.Ct. 589, 591, 30 L.Ed.2d 592] (1972); *Townsend v. Burke,* 334 U.S. 736, 741 [68 S.Ct. 1252, 1255, 92 L.Ed. 1690] (1948). The foundation of that right is due process protection against arbitrary government decisions. A convicted offender does not have a constitutional right to a particular sentence available within a range of alternatives, but the offender does have a right to a fair sentencing *process*—one in which the court goes through a rational procedure of selecting a sentence based

on relevant considerations and accurate information.

*Lane,* 738 F.2d at 864–65. And although not every mistake made in sentencing rises to the level of a due process violation, a sentence must be set aside where the defendant can show that false information was part of the basis for that sentence. The two elements of that showing are, first, that information before the sentencing court was inaccurate, and second, that the sentencing court relied on the misinformation in passing sentence. *Lane,* 738 F.2d at 865.

The majority today, in my view, alters this rule laid down by the Supreme Court and followed in this circuit, by reading the phrase "misinformation of constitutional magnitude" so narrowly as to virtually exclude the very concerns that gave rise to the rule. While the Court coined the phrase "misinformation of constitutional magnitude" in *Tucker, Townsend v. Burke* was the first case in which the Court recognized the existence of a due process right to be sentenced on the basis of accurate and appropriate information. The defendant in *Townsend* had been sentenced to a substantial prison term upon entering a plea of guilty to charges of burglary and robbery. The record revealed that the judge, in imposing sentence, relied upon a record of prior convictions that was inaccurate. The judge also appeared to misunderstand that part of the record which was accurate.[4] The Court held that a sentence imposed in reliance upon such inaccurate information was violative of due process:

> [W]e conclude that, while disadvantaged by lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand.

*Townsend,* 334 U.S. at 741, 68 S.Ct. at 1255.

---

4. The Court in *Townsend* also found the lack of counsel significant; this court does not find it controlling. *See* note 1, *supra.*

In the instant case, the majority implies that the judge's misunderstanding of Turner's compliance with the plea agreement was at most a mischaracterization of the true facts. It was more than that. Judge Mills concededly believed an "untrue" fact —that Turner reneged on his plea agreement. This is *exactly* the type of mistake made by the sentencing judge in *Townsend* which prompted the Supreme Court to vacate the defendant's sentence. Thus, contrary to what the majority opinion seems to imply,[5] mistaken impressions can fatally flaw a sentence to the same extent as mistaken facts. In *United States v. Kerley*, 838 F.2d 932 (7th Cir.1988), a defendant had been sentenced to prison for failing to register for the military draft. We vacated the sentence when the record revealed that the judge had relied not upon mistaken facts, but upon mistaken impressions in imposing sentence. The judge incorrectly believed that the defendant would receive parole within one year based upon the sentence imposed, and he incorrectly surmised that the defendant had encouraged others not to register for the draft, apparently based upon the defendant's membership in a political organization. *Id.* at 940–41.

In the instant case, Judge Mills was under the mistaken impression that the defendant had reneged upon his plea agreement with the government, and he clearly relied upon that false impression in sentencing the defendant. Under the test of *Townsend–Tucker*, as interpreted by this court in *Lane, Kerley* and other cases, this defendant has established that the sentence imposed upon him is violative of due process.

While I firmly believe that the sentence imposed in this case is violative of the defendant's right to due process, I note that the procedural status of this case does not require us to find a due process violation in order to vacate this faulty sentencing. *Tucker,* upon which the majority bases its view that Turner must prove an error of "constitutional magnitude" in order to receive a resentencing, was a collateral attack case; the defendant had to prove a violation of his constitutional rights in order to obtain relief. The same is true of the other seminal case in this area, *Townsend.* However, reliance upon inaccurate or improper information, even if not rising to the level of a due process violation, constitutes reversible error, which can be redressed upon direct if not collateral review. *Johnson v. United States,* 805 F.2d 1284, 1287 (7th Cir.1986).

In the present case, the defendant has sought timely direct review of errors committed during sentencing. And although defense counsel was perhaps less than diligent at times during the sentencing hearing, the government has not argued that the defendant waived these sentencing errors. This court has held that the failure of defense counsel to object as strongly as he should have at sentencing, particularly where the government does not argue waiver, is no bar to relief, even on collateral review. *See United States ex rel. Welch v. Lane,* 738 F.2d 863, 864 n. 1 (7th Cir.1984).

Also, this case may be distinguished from a case where incorrect information is contained, for instance, only in a probation report and no one calls it to the attention of the government, or the sentencing judge. Here what actually had happened before the grand jury was clearly revealed in the testimony at sentencing. It was apparently misinterpreted by Judge Mills. The government even concedes in its brief (as it did at oral argument) that Judge Mills believed the defendant had reneged on his plea agreement. At sentencing the government unfortunately did nothing to help clarify the situation, nor did defense counsel. It is clear, nevertheless, that the defendant did not renege on his bargain. The defendant himself, in answering questions

---

**5.** "Too, we doubt that disagreements of this sort concern 'inaccurate' information. We do not have a dispute about the facts; we have a dispute about the right way to characterize the facts ('recalcitrant' and the like). We are not aware of any case that even suggests that an appellate court may set aside a sentence because of a judge's characterization (or mischaracterization) of undisputed facts." Maj. op. at 1400.

on cross-examination, made it plain that he had appeared and testified in accordance with the plea agreement. The government admitted in open court that he had, but his answers apparently were not of use to the government. The government's disappointment about the defendant's lack of useful information is no grounds for sentence enhancement. The error that occurred here should have been as obvious then as it is now in the record of that proceeding. The error was plain, very plain, regardless of what defense counsel did or did not do. And although the actual sentence which Judge Mills imposed is within the statutory limits, as the majority notes, I consider that fact totally irrelevant in this case. The general rule that this court will not disturb a sentence that is within the statutory guidelines has one very important exception. We can and will vacate a sentence where "the trial court relied on improper or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing sentence." *United States v. Plain,* 856 F.2d 913, 918 (7th Cir.1988) (*quoting United States v. Bush,* 820 F.2d 858, 862 (7th Cir.1987)). This case falls within the exception, not the rule.

A trial judge in these circumstances, if some problem is sensed, would be well advised, I believe, to follow Justice Brennan's sage advice in his concurrence in *Roberts,* 445 U.S. at 563, 100 S.Ct. at 1365. That advice is for the trial judge to raise the issue and to question the circumstances of the defendant's claimed noncooperation, even where no one else does, so as to avoid sentencing upon mistaken facts or unfounded assumptions. But the trial judge should have the help of the government and defense counsel, and neither was adequate in this case.

Finally, I note that contrary to the majority's assertion, Fed.R.Crim.P. 35 (as applicable to offenses committed prior to November 1, 1987) does not offer a complete avenue of relief for this defendant. Turner could, theoretically, file a 35(b) motion in the district court, requesting that Judge Mills reevaluate and reduce his sentence in light of the circumstances surrounding his first sentencing. The majority holds, however, that these circumstances do not require a resentencing. The validity of the sentence was properly raised on appeal, and it should be confronted and decided by us, and not left to the discretion of the trial judge under a different procedure.

I, therefore, find justification for vacating this defendant's sentence (but not his plea of guilty), and remanding for a new sentencing by Judge Mills based upon grounds both constitutional and correct.

Therefore, I must respectfully dissent.